UNITED STATES of America, Appellee,

v.

Manuel Lecaroz PASARELL,
Defendant, Appellant.

No. 83–1410.

United States Court of Appeals,
First Circuit.

Argued Dec. 8, 1983.

Decided Feb. 8, 1984.

John S. McBride, with whom David Cohen, P.C., Monticello, N.Y., was on brief, for defendant, appellant.

Everett M. de Jesus, Asst. U.S. Atty., with whom Daniel Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before COFFIN and BREYER, Circuit Judges, and MALETZ,* Senior Judge.

COFFIN, Circuit Judge.

Appellant Manuel Lecaroz Pasarell was tried by a jury in the United States District Court for the District of Puerto Rico on a charge that on December 24, 1981, he had sold approximately fifty grams of cocaine to one Pedro Tirado. Although Tirado was appellant's second cousin, he proved to be, like Hamlet's uncle, "A little more than kin, and less than kind". He was, in fact, a government informer with a tape recorder in his boot. The jury convicted appellant of selling cocaine in violation of 21 U.S.C. § 841(a)(1). The court sentenced him to ten years' imprisonment and a $25,000 fine; it released him on $200,000 bail pending this appeal. Appellant raises a number of issues on appeal, ranging from challenges to trial procedures to objections to his bail conditions and the severity of his sentence. We disagree with his arguments and affirm the judgment of the district court.

We address first appellant's argument that his conviction should be reversed because the prosecution failed to introduce sufficient evidence to justify the jury in concluding that his insanity defense had been rebutted. Appellant produced several lay witnesses who testified to his erratic behavior in the years preceding the cocaine sale. He also produced a psychologist, Dr. Garcia, who testified that he had examined appellant on a number of occasions beginning in July 1982 and who offered the opinion that appellant had suffered from a depressive psychosis since 1968. The prosecution produced a psychiatrist, Dr. deThomas, who had performed a court-ordered competency examination on the appellant in July 1982. When asked his opinion of appellant's mental condition at the time of the crime, Dr. deThomas stated, "I don't have evidence to give an opinion in terms of what mental condition he had at such date but in view of my evaluation and other facts that I have received, I don't have

evidence to sustain that he was psychotic at that time".

When a defendant introduces evidence of insanity, the prosecution has the burden of proving him sane. *Amador Beltran v. United States*, 302 F.2d 48, 52 (1st Cir.1962). In *United States v. Dube*, 520 F.2d 250 (1st Cir.1975), this court described the prosecution's burden in these terms:

"Insanity is a jury question unless a reasonable man viewing the facts and reasonable inferences therefrom in the light most favorable to the prosecution must necessarily possess a reasonable doubt as to the defendant's sanity. The nature and quantum of rebuttal evidence sufficient to present a jury question is to some extent determined by the strength of the case for insanity. There is no general principle that the prosecution must counter defendant's expert medical evidence with expert testimony of its own. The expert testimony is not conclusive even where uncontradicted; its weight and credibility are for the jury to determine . . . ." *Id.* at 251–52 (citations omitted).

The evidence in this case was not convincing enough to compel a reasonable juror to doubt appellant's sanity. Appellant's expert attempted to reconstruct, by means of tests, interviews with appellant, and a behavioral history supplied by appellant's family and acquaintances, appellant's state of mind some seven months earlier. Although he concluded that "when [the appellant] is in the middle of a crisis he shows a very progressive ability to distort his own reality", he also observed that the appellant "can function all right, when he is in the remission of symptoms", and that such a remission could last for months or even years. On cross-examination he admitted that a psychotic person might be able to distinguish right from wrong, "specially when [he is] under remission of symptoms". He offered no testimony on defendant's state of mind or his ability to conform his behavior to the requirements of the law on the day of the crime.

---

* Of the United States Court of International Trade, sitting by designation.

■ The prosecution's psychiatrist, who interviewed the appellant and considered his psychiatric history, concluded that this evidence was insufficient to establish that appellant had been psychotic at the time of the crime. In addition to this expert testimony, the jury heard the testimony of Tirado, the government informer, who contradicted the defense's theory that the death of appellant's brother a month before the transaction had triggered a psychotic episode. Tirado stated that the appellant "was sad [owing to his brother's death] but at all times he was conscious of what was being done" and that he was not drinking any more than usual. Finally, the jury heard a tape recording of the appellant's cocaine transaction, in which his tone of voice and the nature of his remarks provided some evidence that he was rational, alert, and aware that he was committing a crime. The prosecution's evidence was sufficient to rebut the defense's relatively weak evidence of insanity and to support the jury's conclusion that appellant was sane on the date of the crime.

■ Appellant argues that the court erred in allowing the government to reopen its case in chief to present evidence that went beyond its avowed purpose, to rebut the insanity defense. Appellant contends that the testimony of several witnesses called after the government had reopened its case "was merely cumulative and served to bolster previous government testimony as to the actual transaction". If the evidence of the transaction *was* cumulative, we fail to see how it prejudiced appellant, since it only confirmed what he had already admitted: that he sold cocaine to Tirado. To the extent this additional testimony tended to show that appellant was sane when the transaction occurred, it prejudiced his insanity defense; but this was the purpose for which it was properly admitted. *See generally United States v. Manetta,* 551 F.2d 1352 (5th Cir.1977) (describing the evidence admissible when the government reopens its case in chief to respond to an insanity defense).

Appellant also argues that the government played the tape recording of the transaction at this point in the trial without first causing it to be admitted into evidence. The record contradicts this assertion. The government asked its expert to identify the tape and then moved to have the tape admitted as Exhibit 4. The court called for voir dire, and appellant's attorney stated that he waived voir dire but that he had earlier raised an objection to the evidence. The court noted that it had already overruled this objection, and asked if counsel had any further objection. Counsel indicated that he did not. A short time later the court gave the government permission to play the tape, cautioning the jury that the transcript of the recorded conversation was not in evidence but affirming that the tape itself was in evidence.

Appellant contends that the court committed reversible error in failing to give a curative instruction to the jury after the prosecutor misstated Dr. deThomas's psychiatric testimony, and that the prosecutorial misstatement was so damaging as to deny appellant his right to a fair trial. Dr. deThomas testified, "I don't have evidence to sustain that [Lecaroz] was not aware between right and wrong at the time of the commission of the offense". In his closing argument, the prosecutor transformed this negative statement into a positive one, stating that Dr. deThomas "was convinced that [Lecaroz] at the time of December 24, 1984 [sic], did have a substantial capacity". Appellant's attorney interrupted him with the observation "That is not correct", and the prosecutor repeated his positive statement of Dr. deThomas's testimony. At the request of appellant's attorney, the court prepared a curative instruction informing the jury that it was their recollection of Dr. deThomas's testimony that controlled "and not what the United States Attorney says". The court decided not to deliver this instruction because it believed that the jury had already been told, both in the court's regular instructions and in the prosecutor's closing argument, that they were not to consider the prosecutor's remarks as evidence.

**16**

We disagree with the government's argument that the prosecutor's characterization of Dr. deThomas's testimony fell within the permissible limits of prosecutorial zeal: there is a substantial difference between the statement "I don't know that defendant was not sane" and the statement "I know that defendant was sane". The prosecutor would have better fulfilled his obligations had he admitted his error and done his best to see that it was corrected, rather than stubbornly insisting that his version of the testimony was correct and opposing the defense's motion for a curative instruction. We agree with the trial court, however, that the proposed curative instruction would have added little to the instructions that the jury had already heard. The prosecutor began his summation by informing the jury, "What I am telling you now is not evidence"; and the court, in its regular instructions, told the jurors that they were to consider only the evidence before them and cautioned them to remember that "any statements, objections or arguments made by the lawyers are not evidence in the case .... [I]t is your own recollection and the interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you". Because the proposed curative instruction merely repeated this information, the court's refusal to give the instruction was not reversible error.

It remains for us to determine whether the prosecutorial misstatement so infected the proceedings that it requires us to remand the case for a new trial. When a prosecutor "misstates facts ... in such a way as to prejudice a defendant, a new trial is required". *United States v. Newman,* 490 F.2d 139, 147 (3d Cir.1974); *See also King v. United States,* 372 F.2d 383 (D.C. Cir.1966).

We do not believe that the prosecutorial misstatement in this case resulted in sufficient prejudice to constitute reversible error. First, we note that Dr. deThomas uttered the disputed phrase (or phrases very similar to it) three times during the course of his testimony, in response to the prosecutor's repeated question about defendant's mental condition at the time of the crime. Dr. deThomas first testified, "I don't have evidence to sustain that he was psychotic at that time"; a short time later he said, "I don't have evidence to sustain that he was not aware between right and wrong at the time of the commission of the offense"; and when the prosecutor pressed him to phrase the question in the positive rather than in the negative, he said, "I have no evidence to say that he was not aware between right and wrong". Second, we note that the prosecutor himself, at an earlier point in his closing remarks, correctly summarized the psychiatrist's testimony: he stated that Dr. deThomas had examined the facts before him and had found "that there was no evidence to show that [Lecaroz] did not know what he was doing that day on December 24, 1981 ...." Third, the defense's summation dwelt at some length on the weakness of Dr. deThomas's testimony, stressing to the jury that the testimony had been given in the negative:

"You know what was [Dr. deThomas's] conclusion ...? 'I don't have evidence that shows that the defendant was insane'; that means, 'I don't have evidence to show that he is sane either' and the burden of proof is on the government ....

"He has to prove [sanity] beyond a reasonable doubt. That expert who really knows, allegedly, the most that he can say is that he has no evidence that this boy was insane on December 24.

....

"... Dr. deThomas who is supposed to be an expert and he almost always testifies on behalf of the government and he heard the tapes and the most that he could tell you was that he had no evidence that [Lecaroz] is insane."

This is not a case such as that in *United States v. Newman,* 490 F.2d 139 (3d Cir. 1974), where the prosecutor's misstatement combined with a number of other procedural errors to compromise defendant's right to a fair trial; nor is it like *King v. United States,* 372 F.2d 383 (D.C.Cir.1966), where

the prosecutor repeatedly made an assertion not supported by the evidence. Here we have a single prosecutorial miscasting of testimony in a positive form, immediately called to the attention of the jury by defense counsel's remark "That is not correct", and counter-balanced by at least seven reiterations of the testimony in its negative form. In addition, we have jurors properly instructed "that closing arguments are not evidence and that the jury's recollections control", *United States v. Flaherty*, 668 F.2d 566, 595 (1st Cir.1981). It seems to us highly unlikely that the single misstatement by the prosecutor could have caused the jury to misremember Dr. deThomas's testimony. Viewing the record as a whole, we find that appellant received a fair trial.

Appellant argues that he received ineffective assistance from his chosen counsel during his trial. As evidence that this assertion is correct, appellant points to a number of allegedly erroneous decisions made by his attorney. For example, appellant points out that his attorney refused to employ an entrapment defense, contrary to appellant's wishes; that he refused to allow appellant to testify; and that he failed to request a charge to the jury that they were to draw no inferences from appellant's failure to testify.

An attorney has the duty to render "reasonably competent assistance" to his client. *United States v. Bosch*, 584 F.2d 1113 (1st Cir.1978). The appellate court will not use the benefit of hindsight to second-guess tactical decisions made by the attorney unless they are unreasonable. *United States v. Ortiz Oliveras*, 717 F.2d 1 (1st Cir.1983). The record in this case reveals that the entrapment defense was unlikely to succeed; neither the decision to use a different defense nor the other decisions of which appellant complains were "outside the range of competence expected of attorneys in criminal cases". *Id.* at 5. To the contrary, the record shows that appellant's counsel vigorously and competently represented him throughout the trial. If appellant disagreed with the trial strategy of his chosen counsel, his remedy was to find a different lawyer before trial had begun, not to complain of his lack of success once trial was over.

Appellant argues that the ten-year sentence and $25,000 fine imposed by the trial court were so excessive as to constitute an abuse of discretion. Appellant was convicted under 21 U.S.C. § 841, which provides in subsection (b)(1)(A) that violators "shall be sentenced to a term of imprisonment of not more than 15 years, a fine of not more than $25,000, or both". The trial judge has broad discretion in pronouncing criminal sentences, and a sentence within the statutory limits is not ordinarily subject to review. *United States v. Foss*, 501 F.2d 522 (1st Cir.1974). A court of appeals will, however, review the process by which the sentence is imposed and vacate if it finds that the trial judge has relied on "mechanical sentencing that steadfastly ignores individual differences". *Id.* at 527; *see also United States v. Wardlaw*, 576 F.2d 932 (1st Cir.1978). Appellant argues that the trial court based its sentence on impermissible considerations because it failed to consider that appellant was "a first offender with an otherwise unblemished record and exemplary background" and because its sentence reflected a "thinly veiled distaste for the relatively monied defendant".

The record provides no support for the appellant's claim that the trial judge felt personal animosity toward him, and it provides ample support for the ten-year sentence. At the sentencing hearing, the court indicated that it had read the probation officer's presentence report "very, very, very carefully". It heard evidence from the prosecutor that the cocaine appellant had sold was of an unusual purity, indicating that appellant "had the ability to obtain cocaine straight from the source and is basically way up in the pyramid of the cocaine distribution scheme". The tape of the transaction had also indicated that appellant had access to additional cocaine and to large quantities of marijuana. On the basis of this evidence, the prosecutor recommended a twelve-year sentence.

At the conclusion of the prosecution's presentation, the court heard additional argument by appellant's counsel. The court remarked that "this is the type of case in which a Court has to give a lot of thought". It observed that appellant could not claim that need had forced him into a life of crime, since both he and his family were wealthy. It stated that the probation officer's references to appellant's mental state tended "to adopt the theory of the defense that was not believed by the jury; that . . . was not believed by me". Nowhere in this record is there an indication that the trial court failed to take appellant's individual case into consideration, or that it abused its discretion in imposing the sentence.

As to appellant's other assignments of error, we note that we have reviewed them and find them to be without merit.

*The judgment of the district court is affirmed.*