**UNITED STATES of America, Appellee,**

v.

**Pedro CARRASQUILLO–PLAZA, Defendant, Appellant.**

No. 88–1531.

United States Court of Appeals, First Circuit.

Heard Feb. 9, 1989.

Decided April 25, 1989.

**11**

Before CAMPBELL, Chief Judge,
and TORRUELLA and SELYA, Circuit
Judges.

LEVIN H. CAMPBELL, Chief Judge.

Defendant Pedro Carrasquillo Plaza appeals from his conviction for aiding and abetting the armed robbery of a United States post office in violation of 18 U.S.C. §§ 2, 2114 (1982). Defendant advances three arguments as to why his conviction should be overturned: 1) the government failed to disclose before trial the existence of written statements given to the government by defendant's alibi witnesses and used by the government to impeach the alibi witnesses; 2) the district court erred in not correcting two misstatements of the evidence by the prosecutor in his closing argument and also erred in reproving defense counsel for a comment made in counsel's closing argument; 3) defendant's conviction was obtained by the use of perjured testimony.

I.

On May 28, 1987, two armed men entered the Loiza, Puerto Rico, post office and, after ordering post office employees about, stole money orders and cash. Defendant was later arrested, indicted and tried for his alleged participation in this offense. At trial, the government called three postal employees who identified defendant as being one of the robbers. After the government rested, defendant sought to prove that he could not have been present. Both he and his mother testified in his behalf, as did two alibi witnesses. Defendant had notified the government, pursuant to Fed. R.Crim.P. 12.1, of his intention to offer an alibi defense and of the names of the two alibi witnesses. One alibi witness testified that defendant had been with him when the robbery took place. The second alibi witness testified that he had participated in the robbery but that defendant had not. On cross-examination, the government impeached the alibi witnesses by questioning them about written statements they had given to government agents which were

Rafael F. Castro Lang, San Juan, P.R., by Appointment of the Court, for defendant, appellant.

Jorge E. Vega–Pacheco, Asst. U.S. Atty., San Juan, P.R., Crim. Div., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief for the U.S.

inconsistent with their testimony at trial. Postal inspectors had interviewed the two witnesses and taken their written statements after receiving defendant's notice of alibi defense. The government did not thereafter notify defendant of the existence or contents of these statements prior to using them in cross-examining the alibi witnesses. The jury returned a guilty verdict.

■ Defendant argues that Fed.R. Crim.P. 12.1(b) required the government to disclose the alibi witness statements during discovery. Because the government did not do so, defendant asserts the district court erred in overruling his objection to the use of the statements to impeach his alibi witnesses. However, the text of Rule 12.1 indicates no government duty to disclose these statements. Rule 12.1(b) provides as follows:

**(b) Disclosure of Information and Witness.** Within ten days thereafter, but in no event less than ten days before trial, unless the court otherwise directs, the attorney for the government shall serve upon the defendant or the defendant's attorney a written notice stating the names and addresses of the witnesses upon whom the government intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.

Under the above, the reciprocal duty imposed on the government is limited to the disclosure of the names and addresses of *witnesses* upon whom the *government* intends to rely to place the defendant at the crime scene or to rebut alibi witness testimony. In this case, all the government withheld were written *statements* from defendant's own witnesses,[1] not the names and addresses of the government's witnesses. It would be a considerable enlargement of the plain language of Rule 12.1(b) to read it as requiring the government to disclose its written statements of interviews with defendant's alibi witnesses.

■ Defendant also argues, for the first time on appeal, that a governmental duty to disclose the statements prior to trial was created by his general pretrial Fed.R.Crim. P. 16 motion requesting discovery of "all books, paper, documents and tangible objects which are within the possession, custody or control of the prosecution and which are material to defense preparation." Rule 16(a)(1)(C) requires the government, *upon request of the defendant,* to provide a defendant access to documents and tangible objects within the government's possession "which are material to the preparation of the defendant's defense...." But, even assuming that the alibi witness statements are covered by this rule,[2] defendant did not make a request, together with "a prima facie showing of materiality," for the statements as required under the rule. *United States v. Buckley,* 586 F.2d 498, 506 (5th Cir.1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979). *See also* C. Wright, 2 *Federal Practice & Procedure* § 254, at 66–67 (1982). Defendant's pretrial, blanket demand for "all books, paper, documents and tangible objects" material to his defense was too general to satisfy the requirement of a request and of a showing of materiality. *See United States v. Shoher,* 555 F.Supp. 346, 353

1. Defendant contends that the postal inspectors who interviewed the two alibi witnesses were "rebuttal witnesses" and consequently the statements they obtained from the alibi witnesses should have been disclosed in discovery as they "flow[ed] from said undisclosed rebuttal witnesses." Even assuming for sake of argument that Rule 12.1 prohibits the use of statements "flowing from" an unannounced rebuttal witness, we reject this contention because the postal inspectors were clearly not rebuttal witnesses within the meaning of Rule 12.1. While one of the inspectors testified in the government's case in chief, neither of the inspectors offered testimony that placed defendant at the scene of the robbery or rebutted the testimony of defendant's alibi witnesses.

2. Because the statements were not made by government witnesses, they are not covered by Fed.R.Crim.P. 16(a)(2) which bars discovery of "statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500." *See United States v. Natale,* 526 F.2d 1160, 1171 n. 14 (2d Cir.1975), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976).

(S.D.N.Y.1983) (blanket request insufficient). *See also United States v. Cadet,* 727 F.2d 1453, 1466 (9th Cir.1984) ("A general description of the materials sought or a conclusory argument as to their materiality is insufficient to satisfy the requirements of Rule 16(a)(1)(C).").

Defendant maintained at oral argument that he could not be expected to make a specific request for the statements and establish a prima facie showing of their materiality because he did not know of their existence until they were used by the government at trial. If we were to accept this reasoning, however, we would enlarge Rule 16(a)(1)(C) into a requirement that the government without any focused request and without advance showing of materiality must automatically furnish to the defense before trial all material evidence in its possession that may be unknown to defendant. No precedent construing the rule so broadly has been called to our attention.[3] Here, moreover, it was foreseeable when the defense released their names that the alibi witnesses might thereafter be interviewed by the government. Defendant, looking ahead, might thus have foreseen the desirability of filing a specific request for such materials. He could also have inquired of his own witnesses whether they had given statements to government investigators.

■ Defendant's argument also fails for another reason. When defendant became aware of the statements at trial, he never objected to their use on Rule 16 grounds. Instead, his objection to the government's use of the statements, which prompted a lengthy bench conference, dealt solely with the government's duty of reciprocal discovery under Rule 12.1(b). Consequently, even if there was any merit to his Rule 16 argument, defendant failed to preserve for

appeal his claim that the government was barred from using the statements because of its alleged noncompliance with Rule 16. *See* Fed.R.Evid. 103(a)(1) (requiring objecting party to state specific ground for objection). *See also Bryant v. Consolidated Rail Corp.,* 672 F.2d 217, 220 (1st Cir. 1982).

## II.

Defendant argues that his conviction should be reversed because the government, over his objection, twice misstated the facts in its closing argument. "When a prosecutor 'misstates facts ... in such a way as to prejudice a defendant, a new trial is required.'" *United States v. Pasarell,* 727 F.2d 13, 16 (1st Cir.) (quoting *United States v. Newman,* 490 F.2d 139, 147 (3d Cir.1974)), *cert. denied,* 469 U.S. 826, 105 S.Ct. 107, 83 L.Ed.2d 51 (1984). On the other hand, "[a]llowances must be made for an attorney, even Government counsel, who out of haste or confusion misunderstands the substance of the previous testimony. An honest misinterpretation of testimony without some indication of prejudice does not constitute reversible error." *King v. United States,* 372 F.2d 383, 395 (D.C.Cir.1966).

■ The first alleged misstatement arose in the following context. One of the government's witnesses identified defendant as one of the robbers and stated that during the robbery defendant was wearing a "beige sweater." In an attempt to rebut this evidence, defendant offered testimony by his mother that defendant did not own a "beige *T-shirt.*" In its cross-examination of defendant's mother, the government introduced into evidence a photograph of defendant wearing, as defendant describes it in his brief, a "multicolored beige *polo*

---

**3.** Defendant does not argue in his brief that the government had a duty to disclose the alibi witness statements under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in that they were exculpatory or contained evidence favorable to his defense. We consequently need not address the government's duty of disclosure under such circumstances and where a defendant has made no request or only a general request for *Brady* material. *But*

*see United States v. Hemmer,* 729 F.2d 10, 14–15 (1st Cir.) (defendant failed to establish *Brady* claim since he made only a general discovery request and reports were not obviously exculpatory in nature), *cert. denied,* 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984). *See generally United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); J. Moore, 8 *Moore's Federal Practice* ¶ 16.06[1] (1986).

*shirt.*" Defendant argues that the government mischaracterized and thus unjustifiably undermined his mother's testimony when it implied in its closing argument that she had stated the defendant did not own a beige shirt of *any sort.* The relevant portion of the government's closing argument was as follows:

[PROSECUTOR:] ... [Defendant's mother] stated that her son had never owned any shirts, T-shirts, or polo shirts—

[DEFENSE COUNSEL:] Objection, your Honor.

THE COURT: Counsel, this is argument as to the evidence.

[DEFENSE COUNSEL]: It has to conform to the facts, your Honor.

[PROSECUTOR:] A shirt—that he did not own a shirt which was either beige or cream. I believe. Well, the government presented into evidence [the photograph of defendant]. I will not go further into this. You have the evidence; you will be able to see the evidence.

We scarcely think the prosecutor's mischaracterization, if it was such, "so infected the proceedings that it requires us to remand the case for a new trial." *Pasarell,* 727 F.2d at 16. After defendant lodged his objection, the prosecutor retreated from his initial broad statement to the more accurate use of the word "shirt." And while the assertion may arguably have undermined the testimony of defendant's mother somewhat, it is hard to believe that it affected the outcome of the trial. *See United States v. Mejia–Lozano,* 829 F.2d 268, 274 (1st Cir.1987). In its initial instructions to the jury before any evidence was presented and in its final instructions to the jury, the district court repeatedly admonished that statements and arguments by counsel were not evidence.

For much the same reasons, we conclude that the government's second alleged misstatement does not warrant a new trial. One of defendant's alibi witnesses, Victor Rivera–Sosa, a friend of defendant, testified that he participated in the robbery and that defendant had nothing to do with the robbery. After being arrested, defendant met this witness, who was incarcerated for an unrelated offense, in prison. The defendant testified that when Rivera–Sosa discovered that defendant had been charged with the robbery he told defendant, "Man, I know that you're innocent; I know that you didn't do that." In his closing argument, the prosecutor characterized this statement as follows: "Well, don't worry, you're going to come out all right." Defendant argues that this distorted the evidence and "implied to the jury that from the beginning [Rivera–Sosa] wanted to help [defendant] out in his case." Again, we cannot say the inaccuracy of the prosecutor's remark was of sufficient moment to have prejudiced defendant's right to a fair trial or altered its outcome. This is not to encourage argumentative tactics of this character; the present argument, however, was clearly not of sufficient magnitude to call for a new trial.

■■■ Defendant argues that the district court erred in reproving defense counsel during his closing argument and that this undermined his credibility before the jury. Defense counsel stated in his summation that Rivera–Sosa, in testifying as an alibi witness and admitting to his own participation in the robbery, was exposing himself to "twenty-five years." The district court sustained the government's objection to this statement and instructed the jury that it was for the court, not the jury, to determine defendant's punishment if he were found guilty. The court also told the jury that defense counsel had "misstate[ed] the fact that the punishment is 25 years." We think it was within the bounds of the district court's discretion to refuse to permit counsel to discuss the precise number of years of the potential prison term Rivera–Sosa faced by confessing to the crime for which defendant was on trial. This was not essential to defense counsel's argument. The court apparently feared that the remark would be taken to reveal the sentence to which defendant was exposed. A court is entitled to shield the jury from details of the potential sentence facing a defendant. *See United States v. Del Toro,* 426 F.2d 181, 184 (5th Cir.) (risk of jury

confusion if sentence known), *cert. denied*, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 60 (1970). It is a closer question whether defense counsel should have been accused of having "misstat[ed]" the potential sentence imposed for violation of 18 U.S.C. § 2114. The statute then in effect[4] did, in fact, impose a mandatory 25–year sentence if the defendant was a two-time offender or endangered the lives of victims. It also contains a lesser included offense for robbery of a postal station by a first-time offender who does not endanger the lives of the victims with a dangerous weapon; the penalty under such circumstances is a ten year prison term. Rivera–Sosa was apparently not a two-time offender, but there was evidence that whoever had robbed the post office carried weapons. Thus Rivera–Sosa's "exposure" to a 25–year sentence was real enough. On the other hand, it was conceivable that a jury might find him guilty of the ten-year offense. While the court might better have omitted the reference to a "misstatement," we think any error was minor and would not have affected the outcome. *See United States v. Eldred*, 588 F.2d 746, 750 (9th Cir.1978) (finding that district court's rebuke of counsel was not clearly prejudicial as to affect the outcome of the trial).

### III.

Defendant finally contends that his conviction must be reversed because it was obtained through the use of perjured testimony. "A conviction obtained by the knowing use of false or perjured testimony 'is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *United States v. Kattar*, 840 F.2d 118, 127 (1st Cir.1988) (quoting *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)). *See also Campbell v. Fair*, 838 F.2d 1 (1st Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 126, 102 L.Ed.2d 100 (1988). We reject defendant's argument

here, however, because the record does not show that the testimony was false.

One of the eyewitnesses to the robbery, Desideria Tapia, identified defendant in a photo spread as one of the robbers. Defense counsel and defendant's mother subsequently visited Tapia and showed her a photograph of defendant. Tapia told defense counsel and defendant's mother that she did not recognize the person depicted in the photograph. At trial, Tapia identified defendant as one of the robbers. Tapia also testified that Exhibit No. 8, a photograph of defendant proffered by defendant as an exhibit at trial, was not the photograph defense counsel and defendant's mother had shown her. Defendant claims that this was perjury. But the only record support for this assertion is the testimony of defendant's mother stating that Exhibit No. 8 *was* the photograph shown to Tapia. This does not establish that Tapia's testimony was necessarily false. Rather, it reveals a conflict in the testimony of the two witnesses suggesting, perhaps, that one or the other was lying but, for present purposes, presenting simply an issue of credibility for the jury to decide.

*Affirmed.*

---

4. Section 2114 has been amended so that, effective for offenses committed after November 1, 1987, the 25–year term is the *maximum* sentence, rather than a mandatory sentence. Pub. L. No. 98–473, § 223(d), 98 Stat. 2028 (1984).