UNITED STATES, Appellee,

v.

Bruce Milton MACK,
Defendant, Appellant.

No. 88–1671.

United States Court of Appeals,
First Circuit.

Heard Nov. 2, 1989.

Decided Dec. 26, 1989.

Nydia Maria Diaz–Buxo, Caguas, P.R., for defendant, appellant.

José R. Gaztambide, Asst. U.S. Atty., Rio Piedras, P.R., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief for appellee.

Before CAMPBELL, Chief Judge, and COFFIN, Senior Circuit Judge, and PIERAS,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

A jury in the United States District Court for the District of Puerto Rico found Bruce Mack guilty on three counts: 1) importation of cocaine from outside the United States in violation of 21 U.S.C. § 952(a); 2) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); and 3) possession of cocaine on board an aircraft arriving from outside the United States in violation of 21 U.S.C. § 955. The district court sentenced Mack to 121 months imprisonment on each count, to be served concurrently. Mack appeals. We affirm.

On January 30, 1988, Mack, a soldier in the U.S. Army, absented himself without leave from his military post in Panama. He boarded a Military Air Command Flight at Howard Air Force Base in Panama that was destined for Charleston, South Carolina. The flight stopped at Roosevelt Roads Air Terminal in Ceiba, Puerto Rico, where customs inspections were performed. Three persons on board were arrested at Roosevelt Roads when customs officials found cocaine in their luggage. Cocaine was also found in an unclaimed military duffel bag which bore a social security number that had belonged to someone who died seventeen years ago and that had apparently been subsequently reissued to someone who had not been on the flight. Mack was arrested at the airport in connection with the cocaine found in this bag, after customs officials discovered that Mack's boarding pass indicated that he had checked two bags but claimed only one. Mack was convicted on the basis of evidence tending to show that it was he who had checked the unclaimed military bag containing the cocaine.

I. *The Grand Jury Indictment*

Mack contends that there was no evidence from which the grand jury could have found probable cause to indict him. Mack concedes that a grand jury indictment is generally not open to challenge for inadequate or incompetent evidence. *See United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618–19, 38 L.Ed.2d 561 (1974) ("an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on inadequate or incompetent evidence"); *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge on the merits."); *United States v. Maceo*, 873 F.2d 1, 3 (1st Cir.) ("A court should not inquire into the sufficiency of the evidence before the indicting grand jury...."), *cert. denied,* — U.S. —, 110 S.Ct. 125, 107 L.Ed.2d 86 (1989). However, Mack argues that he can challenge the indictment in this case because there was not even "a scintilla of evidence." *See United States v. Johnson*, 767 F.2d 1259, 1275 (8th Cir.1985) (implying that an indictment should be dismissed if "the grand jury heard no evidence competent to sustain the indictment"). *But see United States v. Short*, 671 F.2d 178, 181–82 (6th Cir.) (rejecting a rule that would allow challenge to a grand jury indictment for complete absence of evidence), *cert. denied,* 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982). Mack also complains that the grand jury indicted him despite the lack of evidence of a field test and of evidence linking him to the cocaine, solely because he was black.

█ While, contrary to Mack's assertions, the grand jury appears to have had sufficient evidence to find probable cause,[1] we need not decide whether this was so, because Mack has waived this objection to

---

* Of the District of Puerto Rico, sitting by designation.

1. Before the grand jury, the government presented testimony from a customs official who stated that, based on his many years experience, the substance found in the unclaimed military bag was cocaine. In addition, the government introduced Mack's boarding pass which indicated that Mack had checked two bags weighing 74 pounds, but claimed only one. There was also evidence that Mack's claimed bag and the unclaimed bag containing cocaine, together weighed about 75.5 pounds.

the indictment by not raising it before trial. Federal Rule of Criminal Procedure 12(b) states that any defense or objection based on defects in the indictment must be raised prior to trial. Failure to do so constitutes a waiver from which a court will grant relief only for cause shown. Fed.R.Crim.P. 12(f); *United States v. Rodriguez,* 738 F.2d 13, 15 (1st Cir.1984). Mack has offered no explanation for failing to comply with Rule 12; he has plainly not shown cause for relief from the consequences of non-compliance. We accordingly decline to consider further his challenge to the indictment.

## II. *The Government's Failure to Provide Mack With Certain Evidence*

Mack argues that by withholding from him the results of whatever field test it may have conducted of the allegedly illegal substance, the government violated Federal Rule of Criminal Procedure 16[2] and the Jencks Act, 18 U.S.C. § 3500. Mack contends that the government's decision not to use any field test results at trial "because at the time of trial the more formal laboratory analysis had already been conducted," did not excuse their nondisclosure to him. He further argues that the government's failure to disclose this putative information violated his Fifth Amendment right to due process under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Additionally, Mack argues that the nondisclosure violated his Sixth Amendment right to counsel, because he was unable to make a meaningful decision whether to use the field test at trial.

There are several difficulties with Mack's Rule 16 argument. First, since there is nothing in the record to show that a field test was ever conducted, its nature, or the nature of any results or report the government may have obtained, we cannot determine whether Rule 16 was violated.

Mack's only request under the Rule was a blanket pre-trial request, couched in the language of the Rule itself. Had he wished to see the results of any field test, he should have followed up by specifically requesting them in the district court, but he did not do so. In the absence of such a request, the government may have believed, rightly or wrongly, that any informal field test results were not covered by the Rule 16 request. A specific request would have permitted the government to provide the information were it willing to do so and, in any case, would have led to the creation of a factual record concerning the test from which the district court and this court could make a meaningful ruling as to the parties' respective rights. *See United States v. Carrasquillo–Plaza,* 873 F.2d 10, 12 (1st Cir.1989) (blanket Rule 16 request too general).

A second difficulty with appellant's Rule 16 argument is that, even if we assume on this scant record that the government violated the Rule, there was no showing of prejudice. *See United States v. Hemmer,* 729 F.2d 10, 13 (1st Cir.) ("In order to succeed on a claimed violation of rule 16 of the Federal Rules of Criminal Procedure, a defendant must demonstrate that he has been prejudiced."), *cert. denied,* 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984). The government itself did not rely at trial on the results of any initial field test it may have performed on the substance. Rather, it relied solely on a laboratory report. This was made available to Mack before the chemist testified to it, and he had an adequate opportunity to use it in his defense. *See United States v. Johnston,* 784 F.2d 416, 425 (1st Cir.1986) (Even where disclosure is delayed, reversal will be granted only if defendants were denied the opportunity to use the disclosed material effectively.). There is nothing

---

**2.** Rule 16 provides, in part,

(D) Reports of Examinations and Tests. Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

Fed.R.Crim.P. 16(a)(1)(D).

whatever in the record to show that any field test results were germane to the case or would in any way have assisted Mack. In the absence of prejudice, appellant cannot prevail on this argument.

■ Mack's assertion that the government's nondisclosure of the field test violated the Jencks Act is also unavailing.[3] It is not at all clear that any field test would have been a "statement ... of the witness" [i.e. the government chemist]. Even if so, however, Mack was required to make a specific request to the district court for a disclosure order following the testimony of the chemist. He did not do so, hence he waived any right to disclosure under the Act. *See United States v. Lyman*, 592 F.2d 496, 498–99 (9th Cir.1978) (defendant abandoned question of whether material was subject to disclosure under Jencks Act by failing to pursue question and obtain decision by district court), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2864, 61 L.Ed.2d 300 (1979); *Lewis v. United States*, 340 F.2d 678, 682 (8th Cir.1965) ("it is defendant's responsibility to invoke the Jencks Act at the proper time and in a proper manner so that a trial court will have a specific opportunity to rule on the applicability of the request").

■ Nor do we find a violation of *Brady v. Maryland*. In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–97. *Brady* does not require reversal for nondisclosure of any arguably relevant evidence; the nondisclosure must be of exculpatory evidence. *See generally United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976);

*see also United States v. Hemmer*, 729 F.2d 10, 14 (1st Cir.1984) ("a defendant, in order to succeed on a *Brady* claim, must show the evidence was exculpatory"). There is no indication that the results of any field test were favorable to Mack's case.[4]

Mack also contends that the government violated Rule 16 by failing to disclose a document that the government unsuccessfully attempted to introduce regarding the circumstances surrounding Mack's leave from the Army. Given the court's refusal to permit the document in evidence, it was likely immaterial under Rule 16(a)(1)(D). But even assuming that Mack was entitled to its disclosure, the nondisclosure does not warrant reversal, because there is no indication of prejudice to Mack's defense.

### III. *The Sufficiency of the Evidence*

■ Mack's sole argument of any possible substance is that the government did not present sufficient evidence for a jury to find him guilty beyond a reasonable doubt. If so, the district court would have erred in denying his motion for acquittal under Federal Rule of Criminal Procedure 29. Mack argues that the government's evidence failed to show that he ever had possession or constructive possession of the unclaimed military bag containing the cocaine.

Evidence is sufficient to uphold a conviction if viewing all the evidence in the light most favorable to the government, a reasonable person could find the defendant guilty beyond a reasonable doubt. *United States v. Rivera Rodriguez*, 808 F.2d 886, 889 (1st Cir.1986). The government need not prove its case by direct evidence, but can rely solely on circumstantial evidence, provided that the evidence is of such weight that a jury could properly find all the elements of the crime beyond a reason-

---

3. The Act provides, in part,
   (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use. 18 U.S.C. § 3500(b).

4. For these same reasons, Mack's assertion that the government's nondisclosure of a field test report violated his Sixth Amendment right to counsel is unavailing.

able doubt. *See id.* at 890 ("The government may prove its case through circumstantial evidence so long as the total evidence, including reasonable inferences, is sufficient to warrant a jury to conclude that the defendant is guilty beyond a reasonable doubt.").

Applying these principles, we believe the evidence was sufficient for a jury to find beyond a reasonable doubt that Mack was responsible for the unclaimed military bag containing the cocaine. The evidence presented at trial was as follows. There is no dispute that at Roosevelt Roads Mack did not present a claim ticket for any bags, and that he there claimed (without a ticket) only one bag. Mack was the only passenger aboard the flight who did not produce the claim tickets for his luggage. The government introduced into evidence Mack's boarding pass and his customs declaration form. Mack's boarding pass indicated that he had checked two bags which weighed a total of 74 pounds. The one bag he claimed at Roosevelt Roads weighed about 25 pounds. The evidence also showed that Mack's boarding pass had four staple holes, which a government witness testified indicates that two claim tickets had been stapled to Mack's pass. The numbers on the strap checks attached to the unclaimed bag containing cocaine and attached to the bag claimed by Mack were sequentially one after the other.

The government also introduced evidence from which a jury could infer that the total weight of the baggage checked by Mack at Howard Air Force Base (which Mack's boarding pass indicated was 74 pounds) was the same as the total weight of the bag Mack claimed at Roosevelt Roads plus the unclaimed military duffel in which the cocaine was found. A government witness testified at trial that the bag claimed by Mack at Roosevelt Roads together with the unclaimed military bag weighed a total of 75.5 pounds. The government presented testimony that the scale used to weigh the bags checked at the Howard Air Force Base, which was a calibrated scale, would be accurate to within about a half a pound, and that the scale used to weigh the military bag and the cocaine, which was not calibrated, would tend to provide a measurement of up to .84 of a pound overweight.

Mack's customs baggage declaration also supported an inference that Mack had checked in two bags. The declaration had been marked with "2" for the number of bags and the two had been crossed out and replaced with a "1." The declaration showed items listed which were crossed out.

In addition, a customs official who was on duty at Roosevelt Roads testified that when cocaine was found in the bag of another passenger, Mack looked visibly nervous. Finally, Mack admitted that he was travelling with false military orders, using papers that he had forged.

Mack took the stand and denied any connection with the unclaimed bag. He testified that he left the army base in Panama with the intention of reporting at an army camp in the United States. He stated that he was travelling with only one bag, that he indicated two on the customs declaration by mistake, and that an agent helped him correct this mistake. As to the missing baggage claim ticket, he testified that he removed it from his boarding pass to place it in his wallet, but that he subsequently misplaced it. He also testified that the four staple holes in his boarding pass resulted from the counter person at Howard Air Force Base clipping his pass twice even though there was only one claim ticket.

We conclude that the evidence was sufficient for a jury properly to find Mack guilty beyond a reasonable doubt. The jury was entitled to disbelieve Mack's testimony and to conclude that the evidence introduced by the government left no reasonable doubt that Mack had had possession of the military bag containing the cocaine; that he knew of the bag's contents; that he checked the bag on the aircraft; and that he had intended to import cocaine into the United States.

AFFIRMED.