UNITED STATES of America, Plaintiff, Appellee,

v.

Maribel LABOY, a/k/a Jennifer Morales, Mary Torres, Defendant, Appellant.

No. 88–2202.

United States Court of Appeals, First Circuit.

Heard March 5, 1990.

Decided July 20, 1990.

Gustavo Adolfo del Toro, Hato Rey, P.R., for defendant, appellant.

José R. Gaztambide, Asst. U.S. Atty., San Juan, P.R., with whom Daniel F. López–Romo, U.S. Atty., Hato Rey, P.R., were on brief, for plaintiff, appellee.

Before BREYER, Chief Judge, TORRUELLA, Circuit Judge, and RE,* Judge.

TORRUELLA, Circuit Judge.

This is an appeal from a jury verdict entered by the United States District Court for the District of Puerto Rico. Appellant Maribel Laboy ("Laboy") was found guilty of kidnapping and transportation in interstate commerce of a minor unlawfully seized and carried away in violation of 18 U.S.C. § 1201.

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

## I. BACKGROUND

On September 1, 1987, Raymond Degro took appellant Maribel Laboy to a travel agency in Ponce, Puerto Rico, where she picked up airline tickets for one adult and one infant to New York, New York. Later that day, he drove Laboy to a housing project in Villalba, Puerto Rico and approximately three hours later Laboy exited the project holding a small infant. She stated that she was taking the infant to its father in New York because the mother had mistreated it.

Degro then drove Laboy to the airport where she boarded a flight to San Juan. There is evidence that Laboy told Degro that, from San Juan, she would fly to New York. Degro later told the Federal Bureau of Investigations ("FBI") agent that to the best of his knowledge Laboy had never been pregnant. He also gave the FBI agent Laboy's address and phone number in Queens, New York.

On September 3, 1987, Aida Luz Estela–Vargas advised FBI agents that on September 1, 1987, her infant child was abducted from her home at the housing project in Villalba by a woman who had given her a false name and address. This information was reconveyed to FBI agents in New York. On September 4, 1987, at about 1:00 p.m., four or five special agents, plus a registered nurse went to the address that they had been given for Laboy. Agent Juliano knocked on the door, identified himself by displaying his badge and credentials, gave his name and told her he was a special agent with the FBI. He then asked her what her name was and she responded Mary Laboy. Upon hearing this, Juliano informed Laboy that she was under arrest for kidnapping.

On September 16, 1987, Maribel Laboy was indicted by a grand jury on charges of kidnapping and transportation of an infant in interstate commerce. Laboy was arraigned on September 16, 1987, at which time she entered a not guilty plea. On September 18, 1987, a detention hearing was held before a United States magistrate, and bail was set. The government appealed the bail award, and a hearing was held by the district court on January 21, 1988. That court reversed the magistrate's decision, and ordered appellant detained without bail.

At a pretrial conference conducted on April 5, 1988, the appellee stated that it planned to introduce no confessions nor admissions at trial. During Laboy's trial, her counsel was informed in chambers of a statement made by his client during the arrest. The court informed Laboy that it would allow her to file a suppression motion on the grounds of voluntariness. The court then ordered the government to produce the witness of the statement, a FBI agent, at a specific time for an interview by appellant. The next day, although Laboy raised issues about the validity of the arrest, she failed to raise any issue about voluntariness. Consequently, the district court held that the FBI agent could testify.

Prior to calling the FBI agent in question, the appellee alerted the court to the possibility of holding a hearing to determine the admissibility of the statement pursuant to Title 18 U.S.C. § 3501. The court inquired whether appellant challenged the statements based on voluntariness, but Laboy only raised an issue as to whether the statement had in fact been made. The district court ruled that that was a fact issue for the jury. *See United States v. Shoemaker*, 542 F.2d 561 (10th Cir.), *cert. denied*, 429 U.S. 1004, 97 S.Ct. 537, 50 L.Ed.2d 616 (1976). Since the appellant did not base her arguments on voluntariness, there was no need to hold a hearing based on *United States v. Cowden*, 545 F.2d 257 (1st Cir.1976).

On May 7, after a five day trial, the jury returned a guilty verdict. Imposition of sentence was continued on several occasions due to post trial motions presented by the probation officer, appellant, and the government. Finally, a sentence was imposed on November 14, 1988, and appellant filed a timely notice of appeal on November 18, 1988.

Appellant raises several claims of error. We discuss them *seriatim*.

## II. MISCONDUCT BEFORE THE GRAND JURY

Laboy characterizes the signing by the prosecutor of the indictment after a true bill was obtained, but before the return was presented to the magistrate, as evidence of the government's having had complete control of the grand jury.[1] Furthermore, appellant argues, there was insufficient evidence for the grand jury to have returned an indictment because none of the witnesses who testified at trial did so before the grand jury.

 "The remedy of dismissal of an indictment based on prosecutorial misconduct is an extraordinary one." *United States v. Rodriguez*, 738 F.2d 13, 16 (1st Cir.1984). "[O]ur review is limited to determining if the district court abused its discretion" in deciding not to dismiss the indictment. *United States v. Maceo*, 873 F.2d 1, 3 (1st Cir.1989). In considering dismissal because of prosecutorial misconduct before a grand jury, it must be determined whether the misconduct significantly infringed on the grand jury's ability to exercise independent judgment. *United States v. Pino*, 708 F.2d 523 (10th Cir. 1983); *United States v. DeRosa*, 783 F.2d 1401 (9th Cir.1986). Even assuming misconduct, failure to show infringement of the grand jury's ability to exercise its independent judgment would result in denial of the motion to dismiss. *United States v. McClintock*, 748 F.2d 1278 (9th Cir.1984); *United States v. Sears Roebuck & Co.*, 719 F.2d 1386 (9th Cir.1983). In the case at bar the district court determined that whatever the prosecutorial violation committed by the Government, it did not justify the dismissal of the indictment.[2] Since the appellant points to no facts, and despite a dili-

gent search we can find none either, indicating that the grand jury's independent judgment was tainted, we agree with the district court.

Courts have found that any valid indictment requires the concurrence of the United States Attorney. Fed.R.Cr.P. 7(c); *see United States v. Cox*, 342 F.2d 167, 171 (5th Cir.), *cert. denied*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). The practice of submitting presigned indictments has not been held as unduly influential on the grand jury's deliberation. *See United States v. Singer*, 660 F.2d 1295, 1303 (8th Cir.1981), *cert. denied*, 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982). Furthermore, "[a]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974); *United States v. Mack*, 892 F.2d 134 (1st Cir.1989); *see also Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). *United States v. Batista*, 646 F.2d 237, 242 (6th Cir.1981).

## III. LEGALITY OF ARREST

 Appellant contends that her arrest was invalid because it was conducted without an arrest warrant.[3] In evaluating whether appellant's concededly warrantless arrest was valid, the threshold inquiry must be whether probable cause existed for such an arrest. *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Probable cause to make an arrest exists where the facts and circumstances of which the arresting officer has knowledge would be sufficient to permit a reasonably

---

**1.** Along these lines, Laboy also argues that because the court did not allow just one Assistant U.S. Attorney to argue the case and make objections, the jury was given the impression that the government was "the owner and the administrator of the procedure."

The district court properly denied appellant's motion as groundless, and not based on any rule of law. We agree.

**2.** Laboy's reliance on *United States v. Estepa*, 471 F.2d 1132, 1135 (2d Cir.1972) "is totally out

of point." *United States v. Jett*, 491 F.2d 1078, 1081 (1st Cir.1974). Such abuse was simply not present below.

**3.** Appellant apparently alleges an additional error in connection with the arrest. She claims that the district court committed error in not reopening the issue of the arrest during the trial. The determination of the validity of an arrest is a matter of law within the province of the judge only.

prudent person to conclude that a crime has been, will be, or is being committed. *Michigan v. De Fillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979) (*citing Adams v. Williams*, 407 U.S. 143, 148–49, 92 S.Ct. 1921, 1924–25, 32 L.Ed.2d 612 (1972); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)).

■ Warrants are not required for all arrests, even ones occurring in the home, if there are extreme or exigent circumstances present. *United States v. Watson*, 423 U.S. 411, 417, 96 S.Ct. 820, 824, 46 L.Ed.2d 598 (1976) (police officer may arrest without warrant when he believes, upon reasonable cause, arrestee guilty of a felony); *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980) (exigent circumstances may justify warrantless home arrests); *Dorman v. United States*, 435 F.2d 385 (D.C.Cir.1970). In *Watson*, the FBI was recognized as being authorized by statute to effect a warrantless arrest under exigent circumstances. *Watson*, 423 U.S. at 417, 96 S.Ct. at 824. Title 18 U.S.C. § 3052 specifically provides that FBI agents may

> make arrests *without warrant* for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the persons to be arrested has committed or is committing such felony. [emphasis added].

The district court held that the FBI agents had probable cause to effectuate the arrest and held that exigent circumstances existed to justify a warrantless arrest. We agree.

As to probable cause, on September 3, 1987, Laboy's companion, Raymond Degro, was interviewed by the FBI regarding his participation in the abduction. He testified to the aforementioned facts which clearly constitute probable cause. This information was conveyed to the FBI agents in New York. "Exigent circumstances occur when a reasonable officer could believe that to delay acting to obtain a warrant would, in all likelihood, permanently frustrate an important police objective, such as to prevent the destruction of evidence relat-

ing to criminal activity or to secure an arrest before a suspect can commit further serious harm." *United States v. Rengifo*, 858 F.2d 800, 805 (1st Cir.1988). The exigency of an infant kidnapping justifies the failure to get a warrant. Furthermore, Laboy's voluntary opening of the door, along with the police having given honest identification, indicates that the intrusion was at best minimal. Minimal intrusion coupled with exigency constitutes a reasonable warrantless arrest—an arrest that was certainly within the confines of the Fourth Amendment.

## IV. STATEMENTS MADE DURING ARREST

Appellant argues that the government violated the pre-trial agreement asking that it be informed of any confessions or admissions to be introduced by the government by not disclosing the arrest statements made by Laboy. She contends that by expressing that there were no confessions or incriminating statements the government was bound by that assertion. The statement at issue was allegedly made to an agent after defendant was told that she was under arrest for kidnapping. The agent claims that appellant told him that "the baby sleeping in the bedroom is mine." According to the government, the statement remained undisclosed because the government did not believe it to be an incriminating statement.

■ While parties are generally entitled to rely on pretrial agreements, district courts have substantial discretion in deciding whether to release a party from such an agreement. *United States v. Jackson*, 621 F.2d 216, 220 (5th Cir.1980). The decision concerning whether to grant such a reprieve depends upon 1) whether the defendant had reasonable notice of the breach of the agreement, *see United States v. Scanland*, 495 F.2d 1104, 1106 (5th Cir. 1974), and 2) upon the balance between the potential for prejudice and the reason for the release. *Id.* In this case, there is no question that the appellant was adequately on notice of the government's intention to use the statement. The appellant was in-

formed in chambers of the government's intention, given an opportunity to interview the FBI agent, and was advised of the availability of a § 3501 hearing on several occasions. The counsel for the government stated that, at all times, he thought that the statement in question would be covered by § 3501 and furthermore that at the pretrial agreement stage he did not foresee that the statement was incriminating.

"[T]he admission and exclusion of evidence is primarily within the discretion of the trial judge, and this determination will not be disturbed absent a showing of abuse of discretion." *Harrington v. United States,* 504 F.2d 1306, 1313 (1st Cir.1974). Although, clearly the statement may be considered prejudicial, because of the notice afforded the appellant as to its use, upon review, we cannot say that the district court abused its discretion in allowing the release. *See, e.g., United States v. Padrone,* 406 F.2d 560 (1969).

## V. ADMISSIBILITY OF IDENTIFICATION FOUR

■ During Laboy's trial, the government attempted to introduce into evidence a document identified as Exhibit for Identification Four.[4] Appellant objected on the grounds that the government had never produced the document during discovery. The Assistant U.S. Attorney, as an officer of the court, relied on the representations made by appellant's counsel that he had never seen the paper in discovery, and did not proceed further with attempts to admit the document into evidence. Two days later, however, the court confronted defense counsel with the minutes of the pretrial conference where Identification Four was mentioned. The court still did not admit the document in evidence. Appellant argues that the district court erred in allowing the government, during cross examination of a defense witness, to refer to the contents of Identification Four and that this error was especially prejudicial, since

the court did not instruct the jury that the document was not admitted into evidence.

Assuming that the appellant is alleging a violation of Fed. R. Cr. P. 16, even if the court erred in allowing the government to lay the foundation for the admissibility of Identification Four, Laboy fails to show any prejudice. *See United States v. Hemmer,* 729 F.2d 10, 13 (1st Cir.), *cert. denied,* 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984); *United States v. Mack,* 892 F.2d 134 (1st Cir.1989).

## VI. NEWS VIDEOTAPE, AGENT WALTER CARROLL AND ROBERT LOHNES

Appellant next argues that she had a right to impeach two witnesses with the use of a video tape of a newscast; that the testimony of Special Agent Walter Carroll was impermissible; and that the withdrawal of expert witness Robert Lohnes was improper. In each instance, we fail to see the errors alleged by appellant. Furthermore, by failing to object below the appellant has waived her right to appeal these issues. *See United States v. Dunn,* 758 F.2d 30 (1st Cir.1985); *United States v. Rivera–Santiago,* 872 F.2d 1073 (1st Cir. 1989). Absent clear error, when an argument was "neither raised in nor considered by the district court, we shall not address it for the first time on appeal." *Cajigas v. Banco de Ponce,* 741 F.2d 464, 469 (1st Cir.1984).

■ Firstly, upon questioning by the court, the appellant stated that it was not offering the video as impeachment evidence and eventually the jury heard the video as substantive evidence. Secondly, Special Agent Carroll's testimony was relevant in that it related to the investigation of the kidnapping in New York. Thirdly, despite the direct question by the district court as to whether appellant's counsel wanted to make an objection to the withdrawal of Lohnes as a fingerprint expert, counsel declined to do so. Thus, we find no substantial injustice that would permit us to agree

---

**4.** According to the appellant's counsel, Exhibit for Identification Four was a piece of paper

with an address, a telephone number and a name.

with the appellant. *See* Fed.R.Civ.P. 61; Fed.R.Evid. 103(a), (d); J. Weinstein & M. Berger, *1 Weinstein's Evidence* ¶ 103[02] at 103–8.

## VII. SUFFICIENCY OF THE EVIDENCE

■ Appellant next alleges that the evidence failed to show that the baby recovered in New York was the same baby kidnapped in Puerto Rico. Although appellant made this objection initially, she failed to renew her Rule 29 motion for acquittal after presentation of the evidence. A defendant who presents evidence and fails to renew a motion for acquittal is deemed to have waived his original motion. *United States v. Doe*, 860 F.2d 488 (1st Cir.1988); *United States v. Greenleaf*, 692 F.2d 182, 185 (1st Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983). Only upon demonstrating "clear and gross" injustice will the appellant prevail. *United States v. Kilcullen*, 546 F.2d 435, 441 (1st Cir.1976). *United States v. Lopez*, 709 F.2d 742, 746 (1st Cir.1983).

■ In examining claims of insufficient evidence, this court must review the evidence considered as a whole, including all inferences that may be reasonably drawn therefrom in the light most favorable to the government, and decide if any rational trier of fact could find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Santiago*, 828 F.2d 866, 870 (1st Cir. 1985); *United States v. Samalot Perez*, 767 F.2d 1, 4 (1st Cir.1985). Nor is it required that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except guilt. *United States v. Santiago*, 828 F.2d at 870; *United States v. Cintolo*, 818 F.2d 980, 990 (1st Cir.1987); *United States v. Rivera Rodriguez*, 808 F.2d 886, 890 (1st Cir.1986). As long as the record as a whole supports the conclusion of guilt beyond a reasonable doubt, the jury is free to choose among reasonable constructions of evidence. *Id.*

■ The record supports the conclusion of guilt. The government presented evidence that baby girl Angelica Torres–Estela was kidnapped September 1, 1987 from her residence at a housing project in Villalba, Puerto Rico. Raymond Degro, Laboy's companion, testified that on that same day he drove Laboy and a baby from the housing project in Villalba, Puerto Rico to the airport in Ponce, Puerto Rico. On September 4, 1987, the baby was found at appellant's apartment in New York. On September 9, 1987 the baby was returned to her mother and her mother recognized the baby as hers.

## VIII. USE OF REBUTTAL WITNESSES

Appellant's last three arguments are addressed to the issue of the use of rebuttal witnesses by the United States during the trial. Laboy took the stand and described the events that took place on September 1, 1987. The government then called Gloria Torres–Zamot to rebut this specific testimony, and Special Agent John Winslow was called to rebut defendant's testimony as to an alleged pregnancy, and a birth of a baby to her in New York on August 17, 1987.

Laboy essentially claims that the testimony was repetitive and cumulative. She also argues that some of the testimony did not rebut what it was supposed to rebut. Finally, she argues that the testimony of Special Agent Winslow was improper because it referred to matters without a proper foundation having first been laid.

■ Rebuttal evidence may be introduced to explain, repel, contradict or disprove an adversary's proof, *United States v. Wright*, 573 F.2d 681 (1st Cir.1978). Its admissibility is a matter for the trial court's discretion. *United States v. Pheaster*, 544 F.2d 353 (9th Cir.1976). The testimonies of both witnesses contradicted that of the defendant and we therefore find no abuse of discretion. Moreover, appellant's failure to object below results in her inability to take issue with this evidence on appeal. *United States v. Figueroa*, 818 F.2d 1020, 1025–26 (1st Cir.1987); *Lakin v.*

*Daniel Marr & Son Co.*, 732 F.2d 233, 236 (1st Cir.1984).

*Affirmed.*