UNITED STATES of America, Appellee,

v.

Roberto MACEO, Defendant, Appellant.

No. 88–1300.

United States Court of Appeals,
First Circuit.

Heard Dec. 7, 1988.

Decided April 19, 1989.

Joel D. Landry, by Appointment of the Court, with whom Connors & Kilguss, Providence, R.I., was on brief, for defendant, appellant.

Michael E. Davitt, Sp. Atty., Dept. of Justice, Washington, D.C., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BREYER and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

Roberto Maceo is appealing his conviction and fifteen year sentence for knowingly and intentionally distributing in excess of five grams of a mixture containing cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Maceo claims that his conviction must be reversed because there was insufficient evidence to support the underlying indictment or to support his conviction, because of prosecutorial misconduct before the trial which led to the violation of his constitutional rights, and because of jury prejudice. Also, he argues that, even if his conviction is upheld, his case must be remanded for resentencing because he was sentenced under a statute that was enacted after the date of the alleged offense and thus is an *ex post facto* law in violation of Article 1, § 9 of the Constitution. We disagree and therefore affirm.

## I.

The government's case against appellant is based largely on the testimony of George Haddock, a detective with the East Providence Police Department that was working on this case with the Drug Enforcement Administration (the "DEA"). On July 15, 1987, Haddock met with Maceo and another man, Johnny Velásquez. They agreed to supply Haddock with 250 vials of "crack."

After discussing the terms of this transaction, Maceo and Velásquez left the meeting area for approximately one-half hour. When they returned, detective Haddock gave the two men $1,500 for the purchase of "a clear plastic bag containing a quantity of vials containing a grayish, gummy substance," presumably the desired "crack." No arrests were made at that time.

On September 23, 1987, detective Haddock testified before a federal grand jury. Maceo contends, and the record appears to support his allegations, that Haddock made a number of misrepresentations at this time. First, detective Haddock testified that he was introduced to "a subject by the name of Robert Maceo," although later trial testimony revealed that he had only been introduced to the man as "Roberto." Also, Haddock testified that Maceo was arrested shortly after the original sale. Finally, he testified that the drugs had been immediately field tested, when in fact no field test had ever been conducted. Maceo does not allege that the prosecutor knew that these statements were false at the time of this testimony.

On the basis of this testimony, the Grand Jury issued a one count indictment against Maceo. He moved to quash the indictment, which, after conducting a hearing, the trial judge denied.

On the morning that Maceo's trial was set to begin, a United States Marshal, allegedly acting upon the instructions of the prosecutor in the case, went to appellant's cell and carefully examined his teeth and gums. Appellant asserts that this examination was conducted in order to verify detective Haddock's description of Maceo's teeth as rotten. Maceo's counsel was never informed of this incident and neither party introduced any evidence at trial about the examination. After a jury verdict of guilty, appellant's motion for a new trial was denied.

## II.

■ It is now well-settled that "[a]n indictment returned by a legally constituted

and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956). A court should not inquire into the sufficiency of the evidence before the indicting grand jury, because the grand jury proceeding is a preliminary phase of the criminal justice process and all constitutional protections will be afforded during trial. *See United States v. De Rosa*, 783 F.2d 1401, 1405 (9th Cir.), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3282, 91 L.Ed.2d 571 (1986). Any other rule would force criminal defendants and the court to bear *two* trials on the charges:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the fifth amendment.

*Costello*, 350 U.S. at 362–63, 76 S.Ct. at 408–09.

█ Under certain circumstances, however, it is appropriate to inquire into the proceedings surrounding a grand jury's decision to indict. Generally, a court, under its supervisory powers, will dismiss an indictment if there has been prosecutorial misconduct that actually biases the grand jury in performing its fact-finding function. *See, e.g., United States v. Basurto*, 497 F.2d 781 (9th Cir.1974). *See generally*, Arenella, *Reforming the Federal Grand Jury and the State Preliminary Hearing to Prevent Conviction Without Adjudication*, 78 Mich.L.Rev. 463, 539–58 (1980).

In *Basurto*, the Ninth Circuit Court of Appeals reversed the appellant's conviction when the prosecutor in the case discovered, before trial, that a key witness in the case had perjured himself during his grand jury testimony. The prosecutor, upon discovering the perjury, informed defense counsel but did not tell the court and the trial

proceeded. The appeals court held, in reversing Basurto's conviction, that "the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached." *Id.* at 785.

This circuit has not yet adopted the holding in *Basurto*. *See United States v. Flaherty*, 668 F.2d 566, 584 (1st Cir.1981). In *Flaherty*, this court was able to avoid the question by focusing on the materiality of the misrepresentations, as the perjured testimony at issue was found to be completely immaterial to the indictment. *Id.*

Other courts have specifically rejected the strict approach adopted in *Basurto*. *See United States v. Adamo*, 742 F.2d 927, 940 (6th Cir.1984) (agreeing with the "basic ethical philosophy of the Ninth Circuit[ ]," but rejecting the imposition of such stringent requirements on the prosecutor), *cert. denied*, 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985). The court in *Adamo* specifically rejected the contention that a prosecutor would be obliged to move for dismissal if evidence at trial indicates that a witness before the grand jury had committed perjury. Instead, the Sixth Circuit required a finding that the defendant's right to a fair trial had actually been undermined and that "actual prejudice" had occurred. *Id.* at 941. "It is enough that there is *some* competent evidence to sustain the charge issued by the Grand Jury even though other evidence before it is incompetent or irrelevant in an evidentiary sense or even false." *Coppedge v. United States*, 311 F.2d 128, 132 (D.C.Cir.1962) (emphasis in original), *cert. denied*, 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701 (1963), *quoted in Adamo*, 742 F.2d at 939.

Our role in this case is only to review the determination made by the court below in deciding not to dismiss the indictment. Thus, our review is limited to determining if the district court abused its discretion in making that decision. *See United States v. Powell*, 823 F.2d 996, 1001 (6th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 464, 98

L.Ed.2d 403 (1987); *Flaherty*, 668 F.2d at 583.

Although Maceo basically argues that there was insufficient evidence to support the indictment, a claim which we would not review, Maceo also argues prosecutorial misconduct because the government's witness allegedly perjured himself while testifying before the grand jury. He does not, however, argue that the prosecutor was aware that the witness was testifying untruthfully. Moreover, there are no detailed allegations that perjury, defined as an intentional, voluntary, and knowing false statement, *see United States v. Johnson*, 767 F.2d 1259, 1275 (8th Cir.1985), actually occurred. Three misrepresentations are at issue: first, using defendant's full name, Roberto Maceo, in connection with the original meeting, although later testimony indicated that he was only introduced as Roberto; second, testimony which could be construed as alleging that Maceo was arrested soon after the drug transaction; and third, that the drugs were positively field tested when in fact these tests were never conducted.

Although the first two statements were unclear, there is no evidence that Haddock was intentionally and knowingly making false statements. "Misstatements or mistakes alone do not justify dismissing an indictment that is facially valid." *Id.* The last statement is more difficult as Haddock knew that no field test was performed and yet specifically stated the opposite during his grand jury testimony.[1] Clearly, there was other sufficient evidence that was both competent and material (such as Officer Haddock's eyewitness testimony about the actual transaction) to sustain the charge issued. Moreover, even Maceo does not claim that the prosecutor was aware of the falsity of this statement. Thus, because no actual prejudice has been shown, we affirm the district court's decision not to dismiss the indictment, without deciding whether this statement amounted to perjury by the officer in question.

III.

Maceo also argues that the Marshal's examination of his teeth and gums on the morning of his trial violated his fourth, fifth, and sixth amendment rights. As Maceo focuses his argument on the sixth amendment, we will begin our inquiry on that ground.

The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The Supreme Court has construed this amendment to require that counsel be notified and given the opportunity to be present at all "critical" stages of a prosecution. Thus, the Court has held that, because the post-indictment period before trial was "perhaps the most critical period of the proceedings ...," *Powell v. Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 59, 77 L.Ed. 158 (1932), all pretrial confrontations would be examined to ensure that counsel's presence was not necessary to protect the accused's right to a fair trial. *See United States v. Wade*, 388 U.S. 218, 227, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967).

The right to counsel was further expanded in three cases decided together by the Supreme Court in 1967. There the Court held that under the sixth amendment an accused is entitled to have his or her counsel notified before any post-indictment lineup or show up is conducted and that said counsel may attend the lineup. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The Court focused on the nature of confrontations between potential witnesses and the accused, concluding that they were *"peculiarly* riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial." *Wade*, 388 U.S. at 228, 87 S.Ct. at 1933 (emphasis added).

---

1. We note that, at trial, evidence was introduced to show that the drugs did test positive for the presence of a cocaine base.

Other cases, however, clearly define the limitations upon this right. The Supreme Court has held that no right to counsel attaches to such post-indictment investigations as the taking of handwriting, fingerprint, or blood samples, examining the physical appearance of the accused, or photo identifications. The Court in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), held that there was no sixth amendment violation when the police forced a defendant to undergo a blood test in order to determine defendant's drunkenness, although the defendant did not yet have counsel who could be notified or present at the time of the test. The Court relied on the conclusion that counsel could not aid the accused under these circumstances and the blood test could be effectively challenged at trial regardless of counsel's presence.

In *Gilbert,* the Court held the sixth amendment did not require counsel to be informed before a handwriting sample could be obtained. This result was mandated by the Court's conclusion that this was not a "critical stage" in the prosecution, because the presence of counsel could not further protect against infractions, and any errors could be remedied at trial. *Gilbert,* 388 U.S. at 267, 87 S.Ct. at 1953–54. "[T]here is minimal risk that [an accused's] counsel's absence at such stages might derogate from his right to a fair trial." *Wade,* 388 U.S. at 228, 87 S.Ct. at 1933.

▮ This case is much more analogous to those cases involving handwriting or blood samples rather than to the lineups at issue in *Wade* and the accompanying cases. The Supreme Court in *Wade* focused on the inherent dangers of the use of subtle influence within lineups that could not be rectified, or even discovered, during trial. In the present case, there are no such dangers. Maceo's teeth were checked, possibly if we accept Maceo's argument, to confirm officer Haddock's report that his teeth were rotted and chipped. This examination was not raised by either party at trial. Even if it had been, any improper testimony could have been easily refuted through another examination of his teeth at trial

and any inappropriate conclusions made during the examination could have been challenged. Lastly, the examination was conducted by a United States Marshal, who was neither a victim of Maceo's offenses nor a potential witness at the trial.

▮ Also, Maceo claims that this examination constitutes a fifth amendment violation of his right against self-incrimination. This privilege, however, is against compelled *testimony* against a defendant's own interests. *Schmerber,* 384 U.S. at 761, 86 S.Ct. at 1830–31. The Court in *Schmerber* held that forced blood sampling does not violate an accused's right against self-incrimination. Although blood tests can lead to evidence against the defendant in a criminal case (such as proof of alcohol content in issue in *Schmerber* ), the Court held that the fifth amendment protects only "the right 'to remain silent unless [the accused] chooses to speak in the unfettered exercise of his own will.' " *Id.* at 763, 86 S.Ct. at 1831 (quoting *Miranda v. Arizona,* 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694 (1966)).

Fifth amendment claims were also raised by appellants in *Wade* and its accompanying cases. The Court dismissed these claims because lineups were not testimonial in nature, which has been interpeted to require actual communication, rather that just any evidence. *Wade,* 388 U.S. at 222, 87 S.Ct. at 1929–30. The Court concluded that

> we have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have.

*Id.* Thus, federal courts have held that forced fingerprinting, photographing, or requiring a defendant to say certain phrases for the purposes of identification do not violate the fifth amendment. *See Schmerber,* 384 U.S. at 764, 86 S.Ct. at 1832.

This case does not involve compelled testimony. Maceo asserts that the examina-

tion was required for purposes of identification, which then equates this case with *Wade* and other similar cases. Although the examination may have led to incriminating evidence, the Supreme Court has made clear that the fifth amendment's protections do not run so far. Because there was no testimony compelled during this examination, we hold that Maceo's fifth amendment rights were not violated.

■ Lastly, Maceo asserts that this incident violated his fourth amendment rights, although he failed to further brief or argue this point. Without deciding whether the examination of Maceo's mouth constituted a fourth amendment violation, we dismiss this claim. The only remedy available within the context of the criminal trial for fourth amendment violations is the exclusion of any evidence illegally obtained. In this case, the prosecutor did not attempt to admit any evidence concerning the examination. Thus, whether or not a violation has occurred, no remedy is available to Maceo during this criminal phase of his trial.[2]

### IV.

Maceo also argues that the district court erred in dismissing his motion for a new trial because of insufficiency of the evidence due to sampling techniques used by DEA agents and because of a prejudicial newspaper article that ran during the course of his trial.

■ Maceo contends that a newspaper story concerning drug raids on Hispanics within Rhode Island, which was released in *The Providence Journal* on the day of his jury deliberations, so prejudiced the jury as to impair their ability to judge him fairly and impede his fifth amendment right to a fair and impartial trial. Because he is a Spanish speaking Cuban national, appellant argues that the newspaper story unfairly prejudiced the jury into believing that he was guilty of the drug charges against him.

"[I]t is virtually impossible to shield jurors from every contact that might affect their vote." *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982). Thus, due process "does not require a new trial every time a juror has been placed in a potentially compromising situation." *Id.* This circuit has held that the defendant has the burden of proving prejudice or jury bias. *United States v. Vargas,* 606 F.2d 341, 344 (1st Cir.1979). In this case, Maceo has shown no evidence of bias but has just concluded that the newspaper article discussing drug raids against some Hispanics somewhere within Rhode Island has necessarily prejudiced the jury against him.

In *Chandler v. Florida,* 449 U.S. 560, 581–82, 101 S.Ct. 802, 813–14, 66 L.Ed.2d 740 (1981), the Supreme Court refused to set aside the convictions of appellants who claimed that publicity about their trial prevented them from receiving fair jury deliberations. The Court held that although a finding of bias requiring reversal was possible, it could not so conclude because the appellants did not attempt "to show with any specificity that [the publicity] impaired the ability of the jurors to decide the case on only the evidence before them or that their trial was affected adversely by the [publicity]." *Id.* at 581, 101 S.Ct. at 813. Thus, as appellant has offered no evidence of bias, we agree with the district court's conclusion to dismiss this claim as unfounded.

■ Finally, Maceo argues that he was entitled to a new trial because the government's expert, who testified as to the drug's analysis, determined the volume of the drug present through statistical sampling and thus did not prove that the actual amount present was greater than five grams of the mixture containing cocaine base.

The DEA chemist testified that the government's exhibit contained 28.32 grams of 72% pure cocaine base. He determined these figures through an examination of 16 of the 227 vials recovered and

---

**2.** This holding does not foreclose other possible remedies (such as a civil suit against the offend-ing Marshal) outside of this context if indeed there has been a violation.

then extrapolating to reach his final numbers. He also testified as to the legitimacy and conservative nature of these statistical methods and was subject to cross-examination on all of his testimony.

There was more than sufficient evidence on which to conclude that there did in fact exist greater than five grams of this substance. It is the jury's role to determine the credibility of witnesses and the weight to accord their testimony. After full cross-examination, the jury had the choice whether to trust the testimony presented. Having so decided, it is not our place to alter that determination.

## V.

Lastly, Maceo argues that he was sentenced under a "no-parole statute" that was enacted after the date of his offense. Thus, he argues, the court imposed an *ex post facto* law in violation of Article 1, section 9 of the constitution.

 Maceo was sentenced under a statute commonly known as the Anti–Drug Abuse Act of 1986. This statute was signed into law on October 27, 1986, almost nine months *before* the date of his offense. Although the statute provided that certain subsections would not be enforced until November 1, 1987, the section under which Maceo was sentenced, 21 U.S.C. § 841(b)(1)(B)(iii), was immediately effective upon signing. Thus, without deciding Maceo's claim that a change in parole would violate the constitution's prohibitions against *ex post facto* laws, we dismiss his claim because he was convicted and sentenced under laws in effect at the time of his offense.

*Affirmed.*