**UNITED STATES of America**

v.

**Francis COLEMAN, Defendant.**

**No. CRIM.A. 96–10047–11–REK.**

United States District Court,
D. Massachusetts.

Feb. 2, 1998.

---

Paul E. Troy, Paul G. Lannon, Sherburne, Powers & Needham, Boston, MA, for Samuel Patrick.

James J. Cipoletta, Cipoletta & Ogus, Revere, MA, for Eugene Terrell Patrick.

Roger Witkin, Boston, MA, for Darius Hines.

William M. White, Jr., Davis, Robinson & White, Boston, MA, for Dana A. Hines.

Benjamin D. Entine, Lynn, MA, for Jason Arthur.

Thomas J. Ford, Thomas J. Ford, Boston, MA, for Allen Ivy.

Diana L. Maldonado, Federal Defender Office, Boston, MA, for Cecil McKnight.

Elliot M. Weinstein, Boston, MA, for Gordon Robinson.

Thomas C. Horgan, Boston, MA, Jonathan Shapiro, Stern, Shapiro, Weissberg & Garin, Boston, MA, for John Robinson.

Michael J. Liston, Glass, Seigle & Liston, Boston, MA, for Randall Robinson.

Joan M. Griffin, Casner & Edwards, Boston, MA, for Francis Coleman.

Michael F. Natola, Natola & Natola, Peabody, MA, for Michael Coleman.

William J. Keefe, Jamaica Plain, MA, for Michael Handy.

David Duncan, Zalkind, Rodriquez, Lunt & Duncan, Boston, MA, for Shawn Lewis.

Alice E. Moore, Mahoney, Hawkes & Goldings, Boston, MA, John M. Russell, Jr., Hull, MA, for Terrence Williams.

Lois M. Lewis, Law Office of Lois M. Lewis, West Newton, MA, for Dana Coleman.

George W. Vien, U.S. Attorney's Office, Boston, MA, for U.S.

## Memorandum and Order

KEETON, District Judge.

### I. Procedural and Factual Background

Defendant Francis Coleman's Motion to Dismiss the Indictment (Docket No. 128, filed February 28, 1997) is before the court for decision after an evidentiary hearing on January 28, 1998. Also bearing upon this matter are defendant's memoranda in support of his motion to dismiss the indictment (Docket No. 129, filed February 28, 1997; Docket No. 277, filed August 27, 1997; and Docket No. 269, filed January 8, 1998) and the government's responses (Docket No. 181, filed August 15, 1997; Docket No. 278, filed January 16, 1998; and Docket No. 276, filed January 26, 1998).

The Fourth Superseding Indictment in this case (Docket No. 261, filed December 18, 1997) charges defendant Frank Coleman with conspiracy to distribute cocaine base, and two counts of distribution of cocaine base on June 7, 1996, and June 14, 1996. Plaintiff seeks dismissal of these charges based on allegations of prosecutorial misconduct during grand jury proceedings.

Before the evidentiary hearing on January 28, 1998, defendant contended that the indictment should be dismissed because a preliminary transcript of a consensually recorded conversation during the June 7 transaction and a laboratory report concerning the June 14 transaction, both of which the government presented to the grand jury, failed to refer explicitly to defendant Frank Coleman by name. The government responded to these allegations by calling the court's attention to a laboratory report concerning the June 7 transaction and to redacted reports by the undercover Massachusetts State Police Trooper who allegedly purchased cocaine from Frank Coleman, both of which mention the defendant by name. At the evidentiary hearing on January 28, 1998, defendant notified the court that he no longer sought dismissal of the indictment on those grounds.

The sole factual allegation remaining as a basis for defendant's claim of prosecutorial misconduct involves certain statements of Boston Police Officer Greg Brown in an affidavit filed in support of a motion to suppress

by a codefendant of Frank Coleman. In this affidavit, Officer Brown asserted that he was told by an informant that the informant had seen defendant conducting drug transactions in the Spring of 1995, when defendant, indisputably, was incarcerated.

Defendant contends that, because Officer Brown appeared before the grand jury, the unsustainable statement from the informant recounted in the affidavit must have been presented to the grand jury. The government alleges that Officer Brown did not testify as to the contents of that conversation with the informant before the grand jury.

To resolve this dispute of fact, defendant asks this court either to draw the inference that Officer Brown's statements regarding an erroneous identification of defendant by the informant necessarily were before the grand jury, or to examine grand jury transcripts to determine whether those statements were in fact made to the grand jury.

At all times, defendant has alleged that Officer Brown's testimony was necessarily false in light of other evidence of record before the grand jury showing that defendant was in prison during the Spring of 1995.

## II. Defendant's Contentions of Law

Defendant contends that, if the court determines that Brown made the above described statements to the grand jury, the government's presentation of that testimony constitutes prosecutorial misconduct that entitles defendant to a dismissal of the charges against him. More specifically, defendant bases his allegation of prosecutorial misconduct on "the presentation of false evidence to the grand jury, which the prosecution knowingly, negligently or with reckless disregard as to the truth or falsity of evidence allowed to be put before the grand jury." Motion to Dismiss the Indictment at 1.

At conferences on this matter previous to the evidentiary hearing of January 28, 1998, the court called attention to the lack of clarity as to the alleged basis for the defense motion, and to the lack of support in any legal precedent for dismissal of an indictment without more specificity of grounds by the defendant. At the conference on January 16, 1998, the court gave notice, that unless defense counsel could bring to the attention of the court before commencement of the evidentiary hearing some legal precedent supporting the motion to dismiss, the court expected to deny the motion as entirely unsupported and unsupportable in law.

At the conference of January 16, 1998, defendant conceded that the facts alleged in support of dismissal could not constitute, as a matter of law, "knowingly" or "recklessly" allowing false evidence to go before the grand jury. Defendant, therefore, clarified that he now contends only that the government negligently "allowed" evidence to "be put before the grand jury."

The merit, as a matter of law, of this remaining contention depends on a showing of support in law for a recognized duty of government counsel to act affirmatively to prevent the grand jury from hearing whatever evidence the defendant alleges that the grand jury should not have heard. Defendant clarified, at the evidentiary hearing of January 28, his contentions regarding the scope of that alleged duty. Defense counsel stated that, if Brown testified before the grand jury that a confidential informant reported having seen Frank Coleman buying cocaine in the Spring of 1995, and the grand jury already had evidence before them that made the informant's report indisputably false, then the government had an obligation not to let the grand jury hear Brown as to his conversation with the informant. Defendant contends that this court, in turn, has an obligation to dismiss the indictment against Frank Coleman because the government violated its obligation in the way just stated.

Defendant relies on *Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) and *United States v. Martinez,* 710 F.Supp. 415, 418 (D.P.R.1989) as support for his contention that prosecutors owe criminal defendants a duty of care in seeking an indictment before a grand jury and that dismissal of the indictment is the appropriate remedy for a breach of that duty. Defendant asserts that dismissal of the indictment in this case is appropriate "if it is established that the violation substantially influenced the grand jury's decision to indict ... or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations."

*Bank of Nova Scotia,* 487 U.S. at 256. Defendant argues that the determination of "grave doubt" is to be made from the perspective of a reasonable judge who is asked to perform a post-indictment, pre-trial review of prosecutorial behavior before the grand jury. Defendant further contends that *Martinez* stands for the proposition that the negligent presentation of false testimony to a grand jury (that is, testimony that is necessarily false in light of other evidence before the grand jury) would constitute the type of violation proscribed under the *Bank of Nova Scotia* standard.

I assume without deciding, as a basis for decision of the present matter, that defendant is correct in contending that *Bank of Nova Scotia* prescribes a "grave doubt" standard for a court to apply when evaluating, after indictment, an allegation regarding *the effect* that allegedly impermissible prosecutorial conduct had on the grand jury's determination of probable cause. If a court is in "grave doubt" and does not find that the decision to indict was free from the substantial influence of such a violation, the court may dismiss the indictment.

Even with the benefit of that assumption, defendant has not shown a ground for dismissal of the indictment in this case. The opinion in *Bank of Nova Scotia* did not determine what conduct would constitute a "violation." In *Bank of Nova Scotia,* the Court took as a given that if the district court found that violations of duties clearly established under Fed.R.Crim.P. 6 had occurred, the Court must consider (1) whether the violations affected the indictment, 487 U.S. at 259, and (2) whether the district court's findings regarding violations of Fed.R.Crim.P. 6 or intentional (not negligent) manipulation of grand jury processes were supported by the evidence of record, *id.* at 260–62. Thus, the opinion focused on the effect that a violation must have had, on the decision to indict, in order to be a basis for dismissal of the indictment. The standard of "grave doubt" concerned how close the court must come to being convinced that the violation influenced the grand jury to find probable cause in order for dismissal to be appropriate. In substance, the answer given in *Bank of Nova Scotia* is that the court is not to dismiss the indictment unless the record, objectively con-

sidered from the perspective of a reasonable jurist, leaves "grave doubt," rather than grounds for believing that the violation did not influence the grand jury to make a finding of probable cause that the grand jury would not have made "but for" the evidence that was before the grand jury as a result of the violation. This formulation is analogous to the formulations used in determining whether an error occurring in the trial court was harmless or instead reversible error. *See id.* at 256. The adoption of the "grave doubt" standard is thus not on point with respect to whether negligence in presenting evidence to a grand jury would be a "violation" of a legally cognizable duty.

For these reasons, I conclude that the opinion in *Bank of Nova Scotia* did not create the duty of care that, as defendant contends, the government owes to each criminal defendant in relation to grand jury proceedings leading to an indictment against him.

The court in *Martinez* did not explicitly consider whether the government was under a duty of care in reaching the conclusion that defendant asks this court to make in the present motion to dismiss. Rather, the court in *Martinez* assumed that the evidence at issue was obviously false and that government counsel had the opportunity to clear it up. The opinion states: "The government, faced with obviously false testimony, could have cleared it up before the grand jury, or else, sought a superseding indictment at a later date." 710 F.Supp. at 418. After assuming that an affirmative duty to keep the testimony away from the grand jury existed, the court held that it had "grave doubt as to whether the act of providing false information to the grand jury influenced its decision to indict." *Id.*

Moreover, if one treats the opinion in *Martinez* as subject to the breadth of interpretation that defense counsel urges, that opinion (so interpreted) would stand in stark conflict with basic principles of the American system of criminal justice and with the rules of decision in this area that the Supreme Court and the Court of Appeals for the First Circuit have unequivocally prescribed. This becomes apparent when one reflects on the practical consequences of such a broad duty

to monitor and screen all evidence going before a grand jury.

Defendant's interpretation of *Martinez* would require first, in this case, a finding of fact by this court that the grand jury heard the objectively false testimony. Defendant could never make a showing that a violation had occurred without the defendant's first specifying some particular evidence that could reasonably support a finding that the grand jury did in fact hear the objectively false information. Allowing a defendant access to records of grand jury proceedings whenever that defendant wishes to move for dismissal of an indictment, so the defendant would have an opportunity to make this kind of showing, would be fundamentally inconsistent with the basic premise of the American legal system that, with exceptions only for extraordinary reasons, the secrecy of grand jury proceedings is to be preserved and protected rigorously. The principle of secrecy of grand jury proceedings serves not only public interests in protecting grand jury proceedings against improper influences, but also private interests of persons against whom witnesses called before the grand jury may make accusations and offer evidence to aid the grand jury in determining whether or not probable cause exists for publicly making a charge against a person in the form of an indictment.

The law regulating grand-jury decision-making does not impose any duty on government counsel that would oblige them to seek affirmatively to discover and disclose to the grand jury all potential inconsistencies between testimony of one witness (Officer Brown in this case) about what others (including confidential informants) have said and other evidence before the grand jury. In *United States v. Rivera–Santiago*, the defendant challenged the presentation of testimony of a known perjurer to the grand jury as being "suspect." 872 F.2d 1073, 1087 (1st Cir.), *cert. denied*, 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). The First Circuit, considering *United States v. Basurto*, 497 F.2d 781 (9th Cir.1974), stated that, as a matter of law, defendant must have established "that the government *knew* the indictment was based partially on perjured testimony which is material." 872 F.2d at 1088 (emphasis added). *See also United States v.*

*Garcia–Rosa*, 876 F.2d 209, 232 (1st Cir. 1989), *cert. denied*, 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989) (government must know testimony is false); *United States v. Bucci*, 839 F.2d 825, 831 (1st Cir.), *cert. denied*, 488 U.S. 844, 109 S.Ct. 117, 102 L.Ed.2d 91 (1988) (prosecutor is not normally under duty to disclose exculpatory evidence to grand jury, nor obliged to impeach its own witnesses). "Misstatements or omissions alone do not justify dismissing an indictment that is facially valid." *United States v. Maceo*, 873 F.2d 1, 4 (1st Cir.), *cert. denied*, 493 U.S. 840, 110 S.Ct. 125, 107 L.Ed.2d 86 (1989). The First Circuit, as illustrated in these decisions, has made it clear that a submission showing objectively false testimony, but falling short of showing an intentional submission of false testimony, is insufficient to show a violation of a prosecutorial duty. Thus, even if a defendant's proffer is sufficient to support a finding of negligence, that is not enough to prove a violation of a prosecutorial duty.

Moreover, proof of a violation of a prosecutorial duty is only one step toward showing a ground for dismissal of an indictment. An indictment returned by a properly constituted and impartial grand jury "is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), *cited in, Bank of Nova Scotia*, 487 U.S. at 261. *See also Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956) ("an indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face is enough to call for trial of the charge on the merits"), *cited in, Bank of Nova Scotia*, 487 U.S. at 261 (as support for proposition that "mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment").

The basic rule is that, because of the constitutionally mandated independence of the grand jury and the prosecutor, courts should be reluctant to dismiss an indictment. A dismissal, therefore, will be ordered only for serious and blatant prosecutorial misconduct that distorts the integrity of the judicial process.

*United States v. Giorgi,* 840 F.2d 1022, 1030 (1st Cir.1988) (citations omitted).

In this case, defense counsel asks this court either to dismiss the indictment without probing farther, or to make a legal ruling of a duty of government counsel, and a factual finding of breach of that duty, to act affirmatively to evaluate all evidence going before the grand jury and to shield the grand jury from hearing evidence that should be evaluated as "false," rather than to let the grand jury weigh the evidence along with all other evidence before them.

In light of the principles explained and precedents cited above, the defendant in this case cannot prevail on this motion without first calling attention to precisely identified exceptional circumstances in this particular case that warrant departure from these precedents. The record before the court does not support defendant's motion to dismiss.

In order to assure that no injustice occurs in relation to this matter, the court received a submission by the government, under seal, of transcripts of testimony before the grand jury regarding observed acts of this defendant that support the grand jury's finding of probable cause as to the offenses charged against this defendant in the Fourth Superseding Indictment. Without doubt in any respect, the transcripts submitted under seal, which the court opened, examined and re-sealed on January 31, 1998, support the finding of probable cause and persuade the court that the grand jury's finding was not influenced by hearsay within hearsay evidence mistakenly identifying some transaction involving this defendant as occurring when he was in fact in custody. This defendant's contention that there was a "dearth of evidence against him" before the grand jury that returned an indictment against him is contradicted by the record.

For these reasons, I conclude, as a matter of law, that defendant is not entitled to a dismissal of the charges against him in the indictment.

### ORDER

For the foregoing reasons, it is ORDERED:

Defendant's Motion to Dismiss the Indictment (Docket No. 128) is DENIED.