**UNITED STATES of America, Plaintiff,**

v.

**[1] Lorenzo MUÑOZ FRANCO, [2] Francisco Sanchez Aran, [3] Ariel Gutierrez Rodriguez, [4] Wilfredo Umpierre Hernandez, [5] Enrique Gutierrez Rodriguez, [6] Rafael Dominguez Wolff, Defendants.**

#### No. CR. 95–0386(DRD).

United States District Court,
D. Puerto Rico.

Oct. 30, 2000.

On Motions to Dismiss,
Nov. 6, 2000.

Maria Dominguez-Victoriano, Edna C. Rosario-Munoz, Jorge E. Vega-Pacheo, U.S. Attorney's Office Dist. of P.R., Hato Rey, PR, Desiree Laborde-Sanfiorenzo, U.S. Attorney's Office, San Juan, PR, for plaintiff.

Harry Anduze-Montano, San Juan, PR, Jorge L. Arroyo-Alejandro, San Juan, PR, Graham A. Castillo-Pagan, Hato Rey, PR, Francisco M. Dolz-Sanchez, San Juan, PR, Andres Guillemard-Noble, Nachman, Guillemard & Rebollo, San Juan, PR, Michael S. Pasano, Zuckerman Spaeder Taylor & Evans, Miami, FL, Ricardo L. Rodriguez-Padilla, San Juan, PR, David W. Roman, San Juan, PR, Joseph J. Rucci, Rucci, Burnham, Carta and Edelberg LLP, Darien, CT, for defendants.

Kevin G. Little, David Efron Law Offices, Rio Piedras, PR, for intervenor-plaintiff.

Alberto J. Perez-Hernandez, Law Offices of David Efron, Rio Piedras, PR, for movant.

## OPINION & ORDER

DOMINGUEZ, District Judge.

A hearing is scheduled for October 30, 2000, to determine the producibility of certain 302 Federal Bureau of Investigation ("F.B.I.") Records as "statements" under the Jencks Act. *See* 18 U.S.C.A. § 3500, et seq. This order is to advise the parties as to the procedure and scope of the hearing.

The Court commences with an overview of the statute. The United States is required in criminal cases to produce at trial to the defense after a witness has testified any statement made by the witness as to the subject matter testified. *See* 18 U.S.C.A. § 3500(a) & (b). Should there be part of the statements not related to the subject matter, the Court is to excise the non-pertinent sections after examining the statement in camera. *See* 18 U.S.C.A. § 3500(c). The term "statement" within the Act is defined as "a written statement made by said witness and signed or otherwise adopted or approved by him." [1] *See* 18 U.S.C.A. § 3500(e)(1). A "statement" is also "a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement," 18 U.S.C.A. § 3500(e)(2) or "a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury." 18 U.S.C.A. § 3500(e)(3).

The United States has submitted a series of 302 F.B.I. Forms, hereinafter referred to as "302 Forms," written by F.B.I. agents, a majority of which narrate facts purportedly provided by government witnesses. The United States, however, alleges that the vast majority of the 302 Forms are not statements because they are not a verbatim account of the witness statements, *see United States v. Newton,* 891 F.2d 944, 953–54 (1st Cir.1989) or because the statements, as expressed in the 302 Forms are not signed or otherwise adopted by the witnesses. *See United States v. Neal,* 36 F.3d 1190, 1198–99 (1st Cir.1994), *cert. denied sub nom., Kenney v. United States,* 519 U.S. 1012, 117 S.Ct. 519, 136 L.Ed.2d 407 (1996); *United States v. Gonzalez–Sanchez,* 825 F.2d 572, 586–87 (1st Cir.1987).

■ Although the Court respects the position of the United States as to the alleged non-applicability of the Jencks Act to the 302 Form documents, the Court would incur in error by merely accepting the "government's word" that the requested material is not covered by the statute. *See United States v. Peters,* 625 F.2d 366 (10th Cir.1980). Whenever there is a doubt as to the production of statements pursuant to the Jencks Act, there exists a presumption that an in camera inspection hearing is required for the Court to inspect the documents and to determine its nature. *See United States v. Neal,* 36 F.3d 1190, 1198 (1st Cir.1994), *cert. denied sub nom., Kenney v. United States,* 519 U.S. 1012, 117 S.Ct. 519, 136 L.Ed.2d 407 (1996); *United States v. Carbone,* 798 F.2d 21 (1st Cir.1986). Concomitantly, should the government be in doubt whether statements are requested to be produced under the Jencks Act, 18 U.S.C.A. § 3500, et seq., the government should deliver them to the judge for his inspection, rather than risk censure, mistrial or later reversal by withholding. *See United States v. Principe,* 499 F.2d 1135 (1st Cir.1974). The procedure used by the Court is non-adversarial in nature. *See Campbell v. United States,* 365 U.S. 85, 95, 81 S.Ct. 421, 427, 5 L.Ed.2d 428 (1961); *United States v. Strahl,* 590 F.2d 10, 14 (1st Cir.1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979); *Ogden v. United States,* 323 F.2d 818 (9th Cir.1963), *cert. denied,* 376 U.S. 973, 84 S.Ct. 1137, 12 L.Ed.2d 86 (1964); *Bary v. United States,* 292 F.2d 53 (10th Cir.1961); *United States v. Hilbrich,* 232 F.Supp. 111 (N.D.Ill.1964); *aff'd,* 341 F.2d 555 (7th Cir.), *cert. denied,* 381 U.S. 941, 85 S.Ct. 1775, 14 L.Ed.2d 704, *reh'g denied,* 382 U.S. 874, 86 S.Ct. 14, 15 L.Ed.2d 117 (1965), *reh'g denied,* 384 U.S. 1028, 86 S.Ct. 1906, 16 L.Ed.2d 1047 (1966).

---

1. Statements made to United States attorneys "signed or otherwise approved by the government witness are producible under the Jencks Act." *Goldberg v. United States,* 425 U.S. 94, 98, 96 S.Ct. 1338, 1342, 47 L.Ed.2d 603 (1976).

■ The specific procedure that the Court undertakes in order to determine the production of the documents under the Jencks Act rests within the sound discretion of the Court. *See United States v. Lamma,* 349 F.2d 338 (2nd Cir.), *cert. denied,* 382 U.S. 947, 86 S.Ct. 407, 15 L.Ed.2d 355 (1965); *Hilbrich,* 232 F.Supp. at 111. Notwithstanding, there seems to be preference for the holding of an in camera inspection.[2] *See Goldberg,* 425 U.S. at 109, 96 S.Ct. at 1347 (1976); *United States v. Del Toro Soto,* 676 F.2d 13, 17 (1st Cir.1982); *United States v. Cole,* 617 F.2d 151 (5th Cir.1980); *Anderson v. United States,* 788 F.2d 517 (8th Cir.1986); *United States v. Roseboro,* 87 F.3d 642 (4th Cir.1996), *cert. denied,* 519 U.S. 1060, 117 S.Ct. 694, 136 L.Ed.2d 617 (1997).

■ Whenever there is a question as to whether a document is a producible statement, the trial judge should on his own motion summon the government agent who prepared the document to testify, or require the government to produce him to determine by extrinsic evidence the production or non-production of the document. *See Campbell,* 365 U.S. at 96, 81 S.Ct. at 427 ("The circumstances of this case clearly required the judge to call Toomey [F.B.I. Agent] on his own motion or require the government to produce him.").

■ The Court should avoid calling the witness unless absolutely necessary:

"Instead of calling [the F.B.I. Agent] or having the Government call him, the trial judge fell into further error by relying upon [the witness] to supply the information he sought.... Reliance upon the testimony of the witness based upon his inspection of the controverted document must be improper in almost any circum-

stances.... Similarly, [the witness] should not have been allowed to inspect the Interview Report, since there necessarily inhered in the witness' inspection of the paper the obvious hazard that his self-interest might defeat the statutory design of requiring the Government to produce papers which are 'statements' within the statute."

*Campbell,* 365 U.S. at 96–97, 81 S.Ct. at 427–28.

■ Since, "inspection [by the government witness] of the controverted document must be improper in almost any circumstance" prior to determination of producibility under the Jencks Act and the witness "should not have been allowed to inspect the Interview Report," the Court concludes that it is improper for a witness to be shown the document at trial in order for him then to decide whether or not he had or will adopt the statement. *Campbell,* 365 U.S. at 97, 81 S.Ct. at 428. Notwithstanding, circumstances may require the court in order to comply with its statutory duty to summon not only the F.B.I. Agent, but also the witness, however, the document should not be shown to the witness. *See Campbell v. United States,* 373 U.S. 487, 83 S.Ct. 1356 (1963); *Williams v. United States,* 328 F.2d 178 (D.C.Cir.1963).

"For the proper conduct of a hearing for a determination of the producibility of a government agent's report of an interview [302 Forms] with a government witness, it is necessary for the trial court to call the government agent who made the report, or the government witness who was interviewed or both to testify as to the status of the report."

---

2. Nevertheless, the Court is cognizant that not every instance calls for an inquiry. For instance, when a defendant fails to make a motion under Jencks and there is no testimony to indicate that the agent recorded the precise words of witness. *See United States v. Newton,* 891 F.2d at 954; *see also* 18 U.S.C. § 3500 ("After a witness called by the United States has testified on direct examination, the

court shall, **on motion of the defendant,** order the United States ..." (emphasis added)); *United States v. Neal,* 36 F.3d at 1198. In this case the defendants have filed motions and thus, the Court shall conduct an inquiry. Further, for the 302 Forms which prima facie demonstrate noncompliance with the statutory requirements, of course, no inquiry is necessary.

C.P. Jhong, Annotation, *Proper procedure for determining whether alleged statement or report of government witness should be produced on accused's demand, under Jencks Act (18 U.S.C. § 3500),* 1 A.L.R.Fed. 252, (1969) (citing *Dennis v. United States,* 346 F.2d 10 (10th Cir.1965), *rev'd on other grounds,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966)).

■■■ The Court in determining the producibility of the documents should also hear arguments of counsel to assist the court in reaching the determination. *Campbell v. United States,* 365 U.S. at 95, 81 S.Ct. at 427.[3] In determining whether the statement constitutes a verbatim account, the Supreme Court has stated that long hand notes that were "complete with respect to pertinent information" complies with the statutory requirement and that a reciting by the agent to the witness "the substance of the account" in the notes is sufficient should the witness agree or confirm the same, thereby adopting or approving the statement. *Campbell,* 373 U.S. 487, 83 S.Ct. 1356 (1963). On the other side of the spectrum "discussions of the general substance that the witness has said do not constitute adoption." *Goldberg,* 425 U.S. at 111 n. 19, 96 S.Ct. at 1348 n. 19 (1976); *see also United States v. Gonzalez–Sanchez,* 825 F.2d at 587 (An occasional question to the witness if the agent had "gotten it right" is insufficient.). The Court further notes that in *Campbell I* at 365 U.S. at 95, 81 S.Ct. at 426, absolute verbatim contemporaneous statements are not required in order to qualify as "statements" under the Jencks Act, a "substantial verbatim recital" is sufficient.[4]

The court deems pertinent to quote the legislative history of § 3500(e)(2) as expressed in *Palermo v. United States,* 360 U.S. at 352–53, 79 S.Ct. at 1224, illustrating statements that are producible and statements that are not within the scope of the law.

"It is clear that Congress was concerned that not only those statements which could properly be called the witnesses' own words should be made available to the defense for purposes of impeachment. It was important that the statement could fairly be deemed to reflect fully and without distortion what had been said to the government agent. Distortion can be a product of selectivity as well as the conscious or inadvertent infusion of the recorder's opinions or impressions. It is clear from the continuous congressional emphasis on 'substantially verbatim recital' and 'continuous, narrative statements made by the witness recorded verbatim, or nearly so ...,' see Appendix B, Post, p. 358, that the legislation was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital. Quoting out of context is one of the most frequent and powerful modes of misquotation. We think it consistent with this legislative history, and with the generally restrictive terms of the statutory provision to require that summaries of an oral statement which evidence substantial selection of material, or which were prepared after the interview without the aid of complete notes, and hence rest on the memory of the agent, are not to be

---

**3.** Pursuant to the holding of *Palermo v. United States,* 360 U.S. 343, 354, 79 S.Ct. 1217, 1226, 3 L.Ed.2d 1287 (1959) that "[i]t would indeed defeat [the] design [of the Jencks Act] to hold that the defense may see statements in order to argue whether it should be allowed to see them." Hence, neither the government nor the judges are authorized to allow inspection of government documents pending the determination of producibility under the Jencks Act.

**4.** In *United States v. Sepúlveda,* 15 F.3d 1161, 1179 (1st Cir.1993), the Court held that to be discoverable under the Jencks Act, a statement must be "substantially a verbatim account" and "signed or otherwise verified by the witness himself." *See also United States v. Neal,* 36 F.3d at 1199 n. 7.

produced. Neither, of course, are statements which contain the agent's interpretation or impressions."

*Palermo v. United States,* 360 U.S. at 352–53, 79 S.Ct. at 1224.

 The Court therefore requests the United States to produce all government agents necessary for the court to conduct an in camera non-adversarial hearing to ascertain the producibility of the documents to defendants pursuant to the Jencks Act. Because the court is aware that some of the 302 Reports date back to the early 1990's, the agents may be elsewhere in the United States and hence, not available in Puerto Rico. F.B.I. agents may be questioned by the Court via phone, but must be identified by a notary public who will forward via fax to the court proper identification of the witness and the notary public. The court invites counsel and AUSA to prepare potential questions to be evaluated by the court to be asked to the agents. The Court's proceeding shall be in camera, on the record, and sealed. Neither the government nor defense counsel shall be present. Appellate courts have held that it is error for the trial court to conduct in camera proceedings to determine producibility under the Jencks Act with a government attorney present and participating. *See United States v. Persico,* 349 F.2d 6 (2nd Cir.1965); *United States v. Schipani,* 362 F.2d 825 (2d Cir.), *cert. denied,* 385 U.S. 934, 87 S.Ct. 293, 17 L.Ed.2d 214, *vacated on other grounds,* 385 U.S. 372, 87 S.Ct. 533, 17 L.Ed.2d 428 (1966).

The Clerk of Court is to notify this order by facsimile and regular mail.

**IT IS SO ORDERED.**

### *ON MOTIONS TO DISMISS*

On June 20 2000, co-defendant Lorenzo Muñoz Franco ("Muñoz") once again [1] filed a motion requesting dismissal pursuant to FED.R.CRIM.P. 12(b). (Docket No. 688).

Co-defendants, Ariel and Enrique Gutierrez Rodriguez ("Gutierrez brothers"), joined. (Docket No. 703). Co-defendant, Francisco Sánchez Arán ("Sánchez"), joined both Muñoz (Docket No. 691), and the Gutierrez brothers. (Docket No. 705). The government opposed (Docket No. 710), stating that it has already filed numerous oppositions previously and it would stand on the prior oppositions and pointed out that the defendants in contravention of the Court's January 4, 2000 order have filed their motions untimely and without request for leave of the Court. Thereafter, the Gutierrez brothers filed an additional supporting motion and therein requested a hearing. (Docket No. 727). Sánchez also supplemented in request for a hearing. (Docket No. 740). Muñoz also filed a supplement (Docket No. 748), which Sánchez joined (Docket No. 752). Not to be forgotten, co-defendant, Wilfredo Umpierre–Hernández ("Umpierre") joined in all of above. (Docket No. 754). Thereafter, the government filed another opposition. (Docket No. 763).

The Court stated in a Scheduling Conference held on August 21, 2000, that the "Court will hold a hearing (if necessary) on August 29, 2000 for the supplemental material regarding the motion to dismiss for presentment of perjured testimony." (Docket No. 721). Nevertheless, the Court agrees with the government that the motions were untimely filed, no request for leave was proffered, and given the number of prior bites at the apple granted, the defendants' motions are **DENIED.**

Notwithstanding, on the merits of the motions the same result would be forthcoming. The Court explains. Succinctly, the defendants allege that the grand jury testimony of a witness, Ray Philip Saffold ("Saffold"), was perjured thereby requiring dismissal of the tainted indictment.

 First, the error complained of is not one "in which the structural protec-

1. In fact, the latest reconsideration order (Docket No. 575) was decided subsequent to

the filing of this "new" motion to dismiss. (Docket No. 696); *see also* (Docket Nos. 574).

tions of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Bank of Nova Scotia v. United States,* 487 U.S. 250, 257, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988) (citations omitted). Accordingly, the "customary harmless-error inquiry is applicable, as in the cases before us, a court is asked to dismiss an indictment prior to the conclusion of the trial." *Id.,* at 256, 108 S.Ct. at 2374. Thus, the standard of prejudice, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* (quoting *United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 945–946, 89 L.Ed.2d 50 (1986)). That is, for dismissal to be proper the Court "after examining the record as a whole, [must] conclude[ ] that an error may have had 'substantial influence' on the outcome of the proceeding." *Id.* (citing *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). Further, the Court makes explicit that the defendants must demonstrate actual prejudice under this standard, as prejudice cannot be presumed. *See id.,* at 255, 108 S.Ct. at 2374.

One of the issues specifically dealt with the Supreme Court in *Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), which is relevant to the instant motions, is restated here for the reader's benefit in its entirety as follows:

> "The District Court found that, to the prejudice of petitioners, IRS agents gave misleading and inaccurate summaries to the grand jury just prior to the indictment. Because the record does not reveal any prosecutorial misconduct with respect to these summaries, they provide no ground for dismissing the indictment. The District Court's finding that the summaries offered by IRS agents contained evidence that had not been presented to the grand jury in prior testimony boils down to a challenge to the reliability or competence of the evidence presented to the grand jury. We have held that an indictment valid on its face is not subject to such a challenge. *United States v. Calandra,* 414 U.S. 338, 344–345, 94 S.Ct. 613, 618–619, 38 L.Ed.2d 561 (1974). To the extent that a challenge is made to the accuracy of the summaries, the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment. *See Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408–409, 100 L.Ed. 397 (1956) (holding that a court may not look behind the indictment to determine if the evidence upon which it was based is sufficient). In light of the record, the finding that the prosecutors knew the evidence to be false or misleading, or that the Government caused the agents to testify falsely, is clearly erroneous. Although the Government may have had doubts about the accuracy of certain aspects of the summaries, this is quite different from having knowledge of falsity."

*Id.,* at 260–261, 108 S.Ct. at 2376–2377.

▇▇▇▇ The Court finds *United States v. Coleman,* 995 F.Supp. 212 (D.Mass.1998) (District Court Judge Robert E. Keeton) to be particularly instructive on the issue at hand and thus, reiterates the pertinent portion verbatim here:

> "The law regulating grand-jury decision-making does not impose any duty on government counsel that would oblige them to seek affirmatively to discover and disclose to the grand jury all potential inconsistencies between testimony of one witness (Officer Brown in this case) about what others (including confidential informants) have said and other evidence before the grand jury. In *United States v. Rivera–Santiago,* the defendant challenged the presentation of testimony of a known perjurer to the grand jury as being 'suspect.' 872 F.2d 1073,

1087 (1st Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). The First Circuit, considering *United States v. Basurto,* 497 F.2d 781 (9th Cir.1974), stated that, as a matter of law, defendant must have established 'that the government knew the indictment was based partially on perjured testimony which is material.' 872 F.2d at 1088 (emphasis added). *See also United States v. Garcia–Rosa,* 876 F.2d 209, 232 (1st Cir.1989), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989) (government must know testimony is false); *United States v. Bucci,* 839 F.2d 825, 831 (1st Cir.), *cert. denied,* 488 U.S. 844, 109 S.Ct. 117, 102 L.Ed.2d 91 (1988) (prosecutor is not normally under duty to disclose exculpatory evidence to grand jury, nor obliged to impeach its own witnesses). "Misstatements or omissions alone do not justify dismissing an indictment that is facially valid." *United States v. Maceo,* 873 F.2d 1, 4 (1st Cir.), *cert. denied,* 493 U.S. 840, 110 S.Ct. 125, 107 L.Ed.2d 86 (1989). The First Circuit, as illustrated in these decisions, has made it clear that a submission showing objectively false testimony, but falling short of showing an intentional submission of false testimony, is insufficient to show a violation of a prosecutorial duty. Thus, even if a defendant's proffer is sufficient to support a finding of negligence, that is not enough to prove a violation of a prosecutorial duty.

Moreover, proof of a violation of a prosecutorial duty is only one step toward showing a ground for dismissal of an indictment. An indictment returned by a properly constituted and impartial grand jury "is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), cited in, *Bank of Nova Scotia,* 487 U.S. at 261, 108 S.Ct. 2369. *See also Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956) ('an indictment returned by a legally constituted and unbiased grand jury … if valid on its face is enough to call for trial of the charge on the merits'), cited in, *Bank of Nova Scotia,* 487 U.S. at 261, 108 S.Ct. 2369 (as support for proposition that 'mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment').

'The basic rule is that, because of the constitutionally mandated independence of the grand jury and the prosecutor, courts should be reluctant to dismiss an indictment. A dismissal, therefore, will be ordered only for serious and blatant prosecutorial misconduct that distorts the integrity of the judicial process.'

*United States v. Giorgi,* 840 F.2d 1022, 1030 (1st Cir.1988) (citations omitted).

In this case, defense counsel asks this court either to dismiss the indictment without probing farther, or to make a legal ruling of a duty of government counsel, and a factual finding of breach of that duty, to act affirmatively to evaluate all evidence going before the grand jury and to shield the grand jury from hearing evidence that should be evaluated as 'false,' rather than to let the grand jury weigh the evidence along with all other evidence before them.

In light of the principles explained and precedents cited above, the defendant in this case cannot prevail on this motion without first calling attention to precisely identified exceptional circumstances in this particular case that warrant departure from these precedents. The record before the court does not support defendant's motion to dismiss."

*United States v. Coleman,* 995 F.Supp. 212, 216–217 (D.Mass.1998).

■ After a thorough review of the universe of Defendants' motions (Docket Nos. 688, 691, 703, 705, 727, 740, 748, 752 & 754), the Court holds that the instances of testimony by Saffold that Defendants

have proffered as perjured or false statements are at best "potential inconsistencies between testimony of one witness ( [Saffold] in this case) about what others (including confidential informants) have said and other evidence before the grand jury." *United States v. Coleman,* 995 F.Supp. at 216.

More importantly, even if the submissions contained in Saffold's testimony were shown to be "objectively false" testimony (which has not been demonstrated), there is, in the Court's estimation, no showing that the government intentionally submitted false testimony. *See id.* ("The First Circuit, as illustrated in these decisions, has made it clear that a submission showing objectively false testimony, but falling short of showing an intentional submission of false testimony, is insufficient to show a violation of a prosecutorial duty. Thus, even if a defendant's proffer is sufficient to support a finding of negligence, that is not enough to prove a violation of a prosecutorial duty."); *see also United States v. Williams,* 504 U.S. 36, 37–38, 52, 112 S.Ct. 1735, 1737, 1744–1745, 118 L.Ed.2d 352 (1992) ("The question presented in this case is whether a district court may dismiss an otherwise valid indictment because the Government failed to disclose to the grand jury 'substantial exculpatory evidence' in its possession.... As a consequence, neither in this country nor in England has the suspect under investigation by the grand jury ever been thought to have a right to testify or to have exculpatory evidence presented. Imposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with this system." (citations omitted)); *United States v. Bucci,* 839 F.2d 825, 831 (1st Cir.), *cert. denied,* 488 U.S. 844, 109 S.Ct. 117, 102 L.Ed.2d 91 (1988) (prosecutor is not normally under duty to disclose exculpatory evidence to grand jury, nor obliged to impeach its own witnesses); *United States v. Maceo,* 873 F.2d 1, 4 (1st Cir.), *cert. denied,* 493 U.S. 840, 110 S.Ct. 125, 107 L.Ed.2d 86 (1989) ("Misstatements or omissions alone do not justify dismissing an indictment that is facially valid.").

Lastly, the Court believes that the indictment was the product of a properly impaneled grand jury and thus, cannot be challenged on the presentment of inadequate or incompetent evidence to the grand jury. *See United States v. Williams,* 504 U.S. at 53–55, 112 S.Ct. at 1745;[2] *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Coleman,* 995 F.Supp. at 216.

In light of the foregoing, the Defendants' motions to dismiss pursuant to Fed. R.Crim.P. 12(b) do not demonstrate the "serious and blatant prosecutorial misconduct that distorts the integrity of the judicial process," *United States v. Giorgi,* 840 F.2d 1022, 1030 (1st Cir.1988), and are

---

**2.** "We accepted Justice Nelson's description in *Costello v. United States,* where we held that "[i]t would run counter to the whole history of the grand jury institution" to permit an indictment to be challenged "on the ground that there was inadequate or incompetent evidence before the grand jury." 350 U.S. at 363–364, 76 S.Ct. at 409. And we reaffirmed this principle recently in *Bank of Nova Scotia,* where we held that 'the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment,' and that 'a challenge to the reliability or competence of the evidence presented to the grand jury' will not be heard. 487 U.S. at 261, 108 S.Ct. at 2377. It would make little

sense, we think, to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation. A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading.'[8] Our words in *Costello* bear repeating: Review of facially valid indictments on such grounds 'would run counter to the whole history of the grand jury institution[,][and][n]either justice nor the concept of a fair trial requires [it].' 350 U.S. at 364, 76 S.Ct. at 409."

*United States v. Williams,* 504 U.S. at 54–55, 112 S.Ct. at 1746.

therefore **DENIED.**[3] No further motions on this subject matter may be filed.[4]

**IT IS SO ORDERED.**

---

**3.** Although the Court may have initially wavered as to the necessity of holding a hearing, the Court is now firmly convinced that defendants' proffer taken individually or as a whole does not reach the required threshold level. *See e.g. United States v. Panitz*, 907 F.2d 1267, 1274 (1st Cir.1990) ("There was no abuse of discretion in rejecting the request for an evidentiary hearing on the issue.... The material facts were not in dispute."). "Misstatements or omissions", *see United States v. Maceo*, 873 F.2d at 4, "objectively false" testimony or "negligence" presentation, *see United States v. Coleman*, 995 F.Supp. at 216, as well as "inadequate or incompetence evidence", *see Costello v. United States*, 350 U.S. 359, 363–364, 76 S.Ct. 406, 408–409, 100 L.Ed. 397 (1956), are all insufficient to vacate an indictment. Only "serious and blatant prosecutorial misconduct", *United States v. Giorgi*, 840 F.2d at 1030, involving an "intentional submission of false testimony", *United States v. Coleman*, 995 F.Supp. at 216, reaches the threshold level.

**4.** This case has been delayed by the filing of these motions dealing with the subject matter, alleged false testimony heard by the grand jury. Delay was precisely the concern of the Court in *Costello* for not reviewing "inadequate or incompetence evidence [brought] before the grand jury." *Costello v. United States*, 350 U.S. at 363, 76 S.Ct. at 408.